COMMONWEALTH *v.* SAMUEL MALETSKY.

Suffolk.    June 22, 1909. — September 23, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Municipal Corporations*, By-laws and ordinances.    *Constitutional Law*, Police power, Delegation of legislative authority.

It here was assumed, that it is within the power of the municipal authorities of a city which has accepted the provisions of R. L. c. 104, § 1, relating to the inspection of buildings, to decide that rags are more inflammable than many other articles, and that picking, sorting or storing them involves peculiar danger of fire, and therefore that ordinances properly may be passed to prescribe the materials and regulate the manner of construction of buildings used for that purpose · and to provide for the inspection and fix the mode of use of such buildings.

A provision of an ordinance of a city which has accepted the provisions of R. L. c. 104, § 1, relating to the inspection of buildings, forbidding the use of any building for the picking, sorting or storage of rags without a permit in writing from the chief of the fire department is invalid and void.

COMPLAINT, filed in the Police Court of Chelsea on August 18, 1908, charging the defendant with using a certain building in Chelsea for the purpose of picking, sorting and storing rags therein, without a permit in writing from the chief of the fire department of Chelsea.

In the Police Court the defendant was found guilty, and appealed from his sentence to the Superior Court. In the Superior Court the case was submitted to *Harris*, J., upon an agreed statement of facts as follows:

This complaint was brought under the provisions of c. 30, § 64, of the Ordinances of the city of Chelsea, passed by the board of aldermen of that city on May 5, 1908, and approved by the mayor on May 15, 1908.

It was agreed between the Commonwealth and the defendant that the following were the material facts, and that the jury

might accept and adopt them as true for the purposes of the trial.

1. That, on or about the date of the offense alleged in the complaint, the defendant used a certain building, as set forth in the complaint, in the city of Chelsea, then owned by him, for the purpose of sorting and storing rags therein, and that at the time of the alleged offense the defendant held no permit for such use of the building from the chief of the fire department of the city of Chelsea.

2. That the building was at the time of the alleged offense a two-story structure, in no part used or occupied for a habitation, and that it then was occupied and used by the defendant for the storage and sorting of rags.

3. That the building was constructed about eight years before the time of the alleged offense, and was so constructed for the purpose of sorting and storing rags, and, until the time of the alleged offense, had been thence continuously so used by the defendant.

4. That, at the time of the alleged offense by the defendant and at all other times, due care was exercised by the defendant and all persons there engaged in the storing of such rags.

Section 64 of the ordinance is as follows: "No person shall use, occupy or maintain any building for the purpose of picking, sorting or storage of rags therein, without a permit in writing from the chief of the fire department. No person shall pick, sort or store rags in any building used for habitation. No person shall pick, sort or store rags in or upon any lot of land, any portion of which is within three hundred feet of any building. Every such permit shall be subject to revocation at any time by the chief of the fire department, subject to an appeal from such revocation to the board created under sections 4 and 66 of this chapter. The chief of the fire department is hereby empowered to make such rules and regulations to be observed by the person named in the permit, his employees, agents and servants, as to the use of the building, and the premises upon which same is to be situated, as he may deem proper, subject to the right of appeal provided for in this ordinance."

Section 67 of the ordinance is as follows: "No building shall hereafter be constructed for the purpose of picking, sorting or

storage of rags or other combustible materials therein, unless the same shall be built of brick, or concrete, not more than two stories in height, with concrete of tile floors, slag roof, fire proof windows, shutters and doors, held by fusible metal link, to close automatically in case of fire and furnished with automatic sprinklers, and such other construction and appliances for the prevention of fire as the superintendent or chief of fire department may require."

Section 9 of the ordinance is as follows: "No building or structure or portion thereof shall be occupied or maintained for the use or storage of combustible materials unless the contents thereof are safe guarded against fire and the building containing the same is constructed to the satisfaction of the superintendent, and the chief of the fire department, and no building used in part as a habitation shall be so occupied or maintained."

5. The defendant offered to prove, if competent, that the sorting and storing of rags was not in itself in any wise dangerous to the public safety or health.

6. Section 72 of the ordinance is as follows: "Whoever violates any provision of this ordinance shall be punished by a fine of not less than twenty nor more than one hundred dollars."

7. That the city of Chelsea had accepted the provisions of R. L. c. 104, § 1, relating to the inspection of buildings.

The defendant offered evidence to prove, under the fifth paragraph of the agreed statement of facts, that the sorting and storing of rags was not in itself in any wise dangerous to the public safety or health. The judge ruled that this evidence was not competent, and excluded it. The defendant excepted.

The defendant asked the judge to rule, that upon the facts in proof there was no evidence upon which the defendant could be found guilty; that upon the facts in proof the jury must return a verdict of not guilty; that the ordinance and ordinances upon which the complaint was founded were invalid and void, and no conviction could be had thereon; that the ordinance and ordinances upon which the complaint was founded were invalid and void, in that they were unreasonable and not within the lawful exercise of any police power of the city of Chelsea; that the ordinance and ordinances upon which the complaint was founded were invalid and void, in that they were in violation of

the limitations and restrictions of the Constitution of the Commonwealth; that the said ordinances were void and of no effect because they were unconstitutional.

The judge declined to give any of these rulings, and thereupon the defendant consented to a verdict of guilty, which was returned by the jury. At the request of the defendant, the judge reported the questions of law thus raised for determination by this court.

If any of the rulings requested by the defendant should have been given, the verdict was to be set aside and a verdict of not guilty was to be ordered by the court. If the evidence offered by the defendant and excluded by the judge should have been admitted, the verdict was to be set aside and a new trial was to be had. If there was no error in the rulings, the verdict was to stand.

The case was submitted on briefs.

*H. Parker, D. A. Lourie & A. A. Ginzberg,* for the defendant.

*A. D. Hill,* District Attorney, *P. Rubenstein,* Assistant District Attorney, *& J. G. Palfrey,* for the Commonwealth.

SHELDON, J. The first sentence of c. 30, § 64, of the City Ordinances of Chelsea reads as follows: "No person shall use, occupy or maintain any building for the purpose of picking, sorting or storage of rags therein, without a permit in writing from the chief of the fire department." The fundamental question now presented is whether this prohibition can be enforced as a valid exercise of the police power. And the question really is whether the prohibition can be upheld under the provisions of R. L. c. 104, § 1, that "Every city, except Boston, and every town which accepts the provisions of this section or has accepted the corresponding provisions of earlier laws may, for the prevention of fire and the preservation of life, by ordinances or by-laws not inconsistent with law and applicable throughout the whole or any defined part of its territory, regulate the inspection, materials, construction, alteration and use of buildings and other structures within its limits, except such as are owned or occupied by the United States or by the Commonwealth and except bridges, quays and wharves, and may prescribe penalties not exceeding one hundred dollars for each violation of such ordinances or by-laws." This ordinance cannot be sustained under

the authority given by R. L. c. 25, § 23, or by St. 1902, c. 187, for the reason that the penalty authorized by these statutes is limited to $20, while the penalty for the violation of any of the provisions of the chapter before us is a fine of not less than $20 nor more than $100. And this ordinance appears to have been intended wholly to guard against the danger of fire. Accordingly it cannot be sustained on the ground of *Commonwealth v. Hubley,* 172 Mass. 58.

We assume that it was within the power of the municipal authorities to decide that rags were more inflammable than many other articles, and that the business of picking, sorting, or storing them involved peculiar danger of fire, and therefore that ordinances properly might be passed to regulate the materials and construction of buildings used for that business and to provide for the inspection and fix the mode of use of such buildings. This is within the principle of many decisions. *Salem v. Maynes,* 123 Mass. 372. *Train v. Boston Disinfecting Co.* 144 Mass. 523, stated in *Commonwealth v. Sisson,* 189 Mass. 247, 253. *Commonwealth v. Parks,* 155 Mass. 531. *Newton v. Joyce,* 166 Mass. 83. *Clark v. South Bend,* 85 Ind. 276. *Green v. Lake,* 60 Miss. 451. *In re Hang Kie,* 69 Cal. 149. *McCloskey v. Kreling,* 76 Cal. 511. *Barbier v. Connolly,* 113 U. S. 27. *Soon Hing v. Crowley,* 113 U. S. 703. Similar doctrines have been affirmed in other cases. *Commonwealth v. Plaisted,* 148 Mass. 375. *Commonwealth v. Mulhall,* 162 Mass. 496. *Commonwealth v. Packard,* 185 Mass. 64, 65. *Austin v. Tennessee,* 179 U. S. 343. The mere fact that one effect of such regulations will be to exclude some individuals from certain occupations, or to prevent them from using their property in some advantageous manner which otherwise would not be unlawful, will not make the regulations invalid. *Commonwealth v. Sisson,* 189 Mass. 247. *Commonwealth v. Hubley,* 172 Mass. 58. *Slaughter House Cases,* 16 Wall. 36. *Mugler v. Kansas,* 123 U. S. 623. *Powell v. Pennsylvania,* 127 U. S. 678. But §§ 9 and 67 of the ordinance before us, the validity of which sections is not brought in question, have provided for the materials and construction of buildings to be used for this business. Can the city of Chelsea also forbid any one from using for this purpose a building constructed in exact conformity with its requirements unless he

shall also have procured a written permit to do so from the chief of its fire department ?   The effect of this additional requirement is to leave it wholly to the will of that officer whether or not any person shall be permitted to engage in this business.   No rules are provided for the exercise of his judgment; there is no appeal from his determination to the city council or the board of control (St. 1908, c. 559), the department of the city government which was entrusted by the Legislature with the exercise of this power.   Doubtless it is to be expected that a subordinate officer entrusted with such unlimited power will use it wisely and with a view only to the public good; but, as in *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464, 466, there is nothing in the ordinance to guide him in passing upon the applications that may be made to him.   His action in revoking a permit once issued may be appealed from; but his refusal to issue any permit is final.   It is left entirely to his untrammelled discretion whether the business of keeping or sorting rags shall be carried on at all in Chelsea, or whether, if carried on, it shall be confined to persons of one nationality or of one way of thinking in religion or politics.   As in *Newton* v. *Belger*, 143 Mass. 598, 599, there are no regulations to guide the applicant for a permit as to what he must do or what qualifications he must show in order to entitle himself to a permit.   Every person, however careful and however well qualified, is forbidden to use any building, although absolutely fireproof, for the storage of any rags, although quite incombustible, without a permit which no qualifications might enable him to obtain.   Neither expressly nor by necessary implication is the chief of the fire department required to base his action in granting or refusing a permit upon the danger of fire involved.   It has been held that when such unlimited power has been granted by the Legislature to certain designated municipal boards or officers, an ordinance by which they undertake to delegate this power absolutely to a subordinate officer will be merely void.   *Coffin* v. *Nantucket*, 5 Cush. 269.   *Day* v. *Green*, 4 Cush. 433.   *Lowell* v. *Simpson*, 10 Allen, 88.   *Commonwealth* v. *Staples*, 191 Mass. 384.   *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9.   *Chicago* v. *Trotter*, 136 Ill. 430.   *State Centre* v. *Barenstein*, 66 Iowa, 249.

This is not a case where the city government has general con-

trol of the subject matter of the ordinance and may impose such conditions as it pleases, as in *Commonwealth* v. *Ellis*, 158 Mass. 555, *Commonwealth* v. *Mulhall*, 162 Mass. 496, and similar cases. The power of the city of Chelsea to deal with this subject is only what is given by R. L. c. 104, § 1; and the city authorities can in no respect transcend the authority thus given. *Commonwealth* v. *Turner*, 1 Cush. 493. *State* v. *Schuchardt*, 42 La. Ann. 49. We need not doubt the power of the Legislature to establish such regulations as this, or to delegate that power to city governments or other boards if it desires to do so, and to make licenses or permits from an administrative officer necessary to the exercise of trades or kinds of business that might involve a public danger. Many cases to this effect have been already referred to. See also *Commonwealth* v. *Page*, 155 Mass. 227, 230; *Commonwealth* v. *Abrahams*, 156 Mass. 57, 60; *Commonwealth* v. *Roswell*, 173 Mass. 119; *Attorney General* v. *Williams*, 174 Mass. 476, 478; *Brodbine* v. *Revere*, 182 Mass. 598; *Sprague* v. *Minon*, 195 Mass. 581; *Commonwealth* v. *Kingsbury*, 199 Mass. 542. But as has been already pointed out, the effect of the enforcement of this ordinance by the chief of the fire department may be wholly to prohibit the carrying on of the specified business in Chelsea. It is practically for him and not for the board of control to make such rules and regulations to be observed by any to whom he may choose to give permits as he may think proper; and so far as he may make compliance with his regulations a condition precedent to the issue of a permit, his power is absolute. These are legislative functions. And as was said in Cooley on Constitutional Limitations, (7th ed.) 293, a "very important limitation which rests upon municipal powers is that they shall be executed by the municipality itself, or by such agencies or officers as the statute has pointed out. So far as the functions are legislative, they rest in the discretion and judgment of the municipal body entrusted with them, and that body cannot refer the exercise of the power to the discretion and judgment of its subordinates or of any other authority." *State* v. *Paterson*, 5 Vroom, 163, 168. *Lyon* v. *Jerome*, 26 Wend. 485. *Brooklyn* v. *Nodine*, 26 Hun, 512. *East St. Louis* v. *Wehrung*, 50 Ill. 28. *Kinmundy* v. *Mahan*, 72 Ill. 462. *Ruggles* v. *Collier*, 43 Mo. 353.

The general principle also has been affirmed that, at any rate in the absence of a clear expression of the legislative will, an ordinance which attempts to vest in a city council or a board of control or some administrative officer of the municipality the power, not subject to review by the courts or by other higher authority, to permit or refuse to permit the carrying on of a business lawful in itself and not prohibited by legislation, is not to be sustained. It was said by Brown, J., in *Austin* v. *Tennessee*, 179 U. S. 343 : " Although it was held in *Barbier* v. *Connolly*, 113 U. S. 27, and *Soon Hing* v. *Crowley*, 113 U. S. 703, that a municipal ordinance prohibiting laundry work within certain territorial limits and within certain hours was purely a police regulation, such an ordinance was void, if it conferred upon the municipal authorities arbitrary power at their own will and without regard to discretion in the legal sense of the term, to give or withhold consent as to persons or places without regard to the competency of the persons applying, or the propriety of the place selected for carrying on business." And see to the same effect *Gundling* v. *Chicago*, 177 U. S. 183; *Plessy* v. *Ferguson*, 163 U. S. 537, 550 ; *Yick Wo* v. *Hopkins*, 118 U. S. 356 ; *Mayor & City Council of Baltimore* v. *Radecke*, 49 Md. 217 ; *Richmond* v. *Dudley*, 129 Ind. 112; *Moneyweight Scale Co.* v. *McBride*, 199 Mass. 503, 514. The pursuit of a lawful business, not in itself harmful, though it may be regulated, is not, without legislative sanction, wholly to be stopped by municipal ordinances for the prevention of fire or for safeguard against some other apprehended danger. *Belmont* v. *New England Brick Co.* 190 Mass. 442. *Commonwealth* v. *Rawson*, 183 Mass. 491, 494. *Belcher* v. *Farrar*, 8 Allen, 325, 328. *Austin* v. *Murray*, 16 Pick. 121, 126. *Commissioners of Northern Liberties* v. *Northern Liberties Gas Co.* 12 Penn. St. 318. *Montgomery* v. *West*, 9 L. R. A. (N. S.) 659, and note. And see *Wineburgh Advertising Co.* v. *Murphy*, 195 N. Y. 126.

Accordingly, in our opinion, that part of c. 30, § 64, of the City Ordinances of Chelsea which forbids the use of any building for the picking, sorting or storage of rags without a permit in writing from the chief of the fire department is invalid and void ; and the first and second instructions requested by the defendant should have been given. This conclusion makes it unneces-

sary to consider whether the evidence offered by the defendant should have been admitted, either to the court or to the jury.

In accordance with the terms of the report a verdict of not guilty must be entered.

*So ordered.*