# The Township of Lower Merion *v.* Louis Harrison, Appellant.

*Townships — First-class townships — Building code — Right to classify according to use—Lack of authority.*

A first-class township had no power under the Act of June 7, 1919, P. L. 424, to classify buildings and their mode of construction, according to the use to be made of them, or to require a certificate, authorizing a change of use or occupancy, before such change can lawfully be made. In the absence of specific authority to classify buildings, an ordinance is illegal which seeks to classify them according to use, and require a certificate of occupancy to be obtained before any one could use or occupy any building so erected, or change the same to a use or occupancy with more stringent regulations.

While the State in the exercise of its police powers may adopt regulations limiting the use and occupancy of buildings, and may delegate such power to municipalities, or even to townships, such a grant of power, with its necessary interference with the use and enjoyment of individual property, must be express and definite and not left to inference, nor read into statutes which are capable of reasonable and sensible interpretation without it.

*Semble,* that the Act of June 29, 1923, P. L. 957, gives such authority.

Argued December 1, 1924.   Appeal, No. 91, Oct. T., 1924, by defendant, from judgment of C. P. Montgomery Co., April T., 1923, No. 9, affirming judgment of the Justice of the Peace in the case of The Township of Lower Merion v. Louis Harrison.   Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Reversed.

Appeal from judgment of the justice of the peace. Before MILLER, P. J., and WILLIAMS, J.

The court dismissed the appeal and affirmed the judgment in favor of the plaintiff in the sum of $25. Defendant appealed.

*Error assigned* was the judgment of the court.

*Aaron S. Swartz, Jr.,* and with him *John M. Dettra* and *Samuel H. High,* for appellant.

The Act of 1917 gave townships of the first class the power to regulate the construction and repair of buildings, but this power did not include the power to regulate the use and occupancy thereof: St. David's Church v. Sayen, 244 Pa. 300; Haverford Township v. Wilfong, 60 Pa. Superior Ct. 214; Trevorton Water Supply Company v. Zerbe Township, 259 Pa. 31; Dempster v. United Traction Company, 205 Pa. 70; Duquesne Light Co. v. Duff, 251 Pa. 607; Lower Merion Township v. Postal Co., 25 Pa. Superior Ct. 306.

When a part of the police power is delegated to subordinate local authorities, the statute must be strictly construed: Endlich-Interpretation of Statutes, 352; Black Interpretation of Laws, 2d ed., pages 499-503; Herrington's Petition, 266 Pa. 88; City of St. Louis v. Dorr, 37 Southwestern Reporter 1108.

*Franklin L. Wright,* and with him *Parker S. Williams,* Solicitor for Lower Merion Township, for appellee.

OPINION BY KELLER, J., February 27, 1925:

The Act of July 19, 1917, P. L. 1115—(reënacted in the Act of June 7, 1919, P. L. 424)—provides: "That every township of the first class of this Commonwealth shall have the power, by ordinance, to make regulations for the construction of new buildings and the repair of old ones, and to require that, before the work begins, municipal approval of the plans and specifications therefor be secured; and to provide for the inspection of such construction and repair, including the appointment of one or more building inspectors; to prescribe limits wherein none but buildings of noncombustible material and fireproof roofs shall be erected or substantially reconstructed or removed thereinto." The question raised

by this appeal is, does this act grant to such townships the power to classify buildings and their mode of construction, according to the use to be made of them, and require a certificate authorizing a change of use or occupancy before such change can lawfully be made?

Basing its action on the above statute, the Township of Lower Merion—a township of the first class—on May 11, 1920, adopted an ordinance to establish building regulations, known as the Lower Merion Building Code of 1920; and on December 27, 1921, repealed and superseded it by an ordinance known as the Lower Merion Building Code of 1921. Both of these ordinances were elaborate building codes of fifty or more pages in volume, providing not only for the construction of buildings of stone, brick, frame, hollow tile and concrete blocks, respectively, their foundations, thickness of walls for each story, floors, ceilings, roofs, lathing, chimneys, fireplaces, flues, and registers, and other details incident to the construction and repair of buildings, but also classifying buildings according to the uses to be made of them, and requiring a certificate of occupancy to be obtained before any one could use or occupy any building so erected or change the same to a use or occupancy with more stringent regulations.

The article relating to certificates of occupancy is practically the same in both ordinances. The Code of 1921 provides, in part, as follows: "Section 400. It shall be unlawful for any person to occupy or use any building hereafter erected or altered, or any now existing building, the nature of whose occupancy or use is intended to be so changed as to bring it within the meaning of any kind of occupancy or use requiring more stringent regulations under the terms of this ordinance, unless a written application supported by an affidavit shall have been made by the owner to the building inspector, and a certificate of occupancy shall have been issued by the township secretary."

Further sections prescribe what the application must set forth, including the classification of the building, the use or occupancy to which the building has been put and that which is intended in the future, the number of persons that may be accommodated in the several stories, if such number is limited by the specifications, building permit or provisions of the ordinance; give the building inspector power to approve, reject or modify the application; and forbid any change of occupancy or use inconsistent with the certificate issued for such building, unless a new certificate authorizing the same is obtained.

This appeal is from the action of the court below sustaining section 400 above as a valid exercise of the power granted by the Act of 1917, supra.   Harrison, the defendant, secured a permit for the erection of a two-story brick building in the business section of Ardmore.   The building, as approved by the building inspector, was to contain storerooms on the first floor and offices on the second story.   This permit was issued under the Building Code of 1920.   In the course of erection Harrison changed his plans and fitted up the rear portion of the second story as apartments.   The provisions of the building code required more stringent regulations for apartments than for offices.   When the building was completed the Building Code of 1921 was in force.   Harrison leased the apartments to four tenants who moved in and occupied them.   No certificate of occupancy was obtained by him or them.   Suits were brought against all of them for the penalty provided in the ordinance of 1921 for violation of its provisions and judgment entered against them respectively.   On appeal by Harrison, (upon allowance of the court of common pleas), judgment was entered in favor of the township and against this appellant in the sum of $25 for having used or occupied said building or permitted its use and occupancy without securing the certificate of occupancy required by section 400, supra.

In construing the Act of July 19, 1917, it is proper to note that it is an exact copy of clause XXI, section 2, article I, chapter V, of the Borough Code of 1915, (P. L. 312, 334); thus extending to townships of the first class the same powers conferred on boroughs. It would seem to be the legislative intention that boroughs and townships of the first class should have the same powers, in this respect, and, accordingly, it will be helpful to consider the power of boroughs to regulate the construction and repair of buildings.

Until 1907, boroughs did not possess this power. By the Borough Act of 1851, (P. L. 320), power was given the borough to make all needful regulations respecting foundations and party walls of buildings (section 2, cl. VII). That was all. And that such grants of power are not to be presumed is seen from the decision in Kneedler v. Borough of Norristown, 100 Pa. 368, where it was held that boroughs generally had not the power to pass ordinances forbidding the erection of frame buildings within their limits. Following this decision the Act of June 3, 1885, P. L. 55, was passed which authorized boroughs to pass ordinances to regulate or prevent the erection of any wooden dwelling house, shop, warehouse, store, carriage house, stable, or other frame tenement within their respective limits; and this specific grant of power was upheld as constitutional in Klingler v. Bickel, 117 Pa. 326. The power of boroughs, as thus enlarged, remained unchanged until the Act of May 8, 1907 (P. L. 184), was passed, when in order "to prevent the spread of fires and to secure structural and sanitary safety of the buildings" within their limits, the power was granted to boroughs,—in practically the same language as was incorporated into the General Borough Act of 1915 and extended to townships of the first class by the Act of 1917, supra—to establish by ordinance, general regulations for the construction of new buildings and the repair of old ones. There is nothing in this act or the Acts of 1915 and 1917, however,

that leads to the conclusion that the power thus given to make regulations for the construction of new buildings and the repair of old ones includes the power to classify buildings according to their use and occupancy and to enact a code based upon such classification, as full, complete and particular as the legislature has prescribed or authorized for the populous cities of the first and second classes.  Under these acts ordinances can be passed providing for the construction of stone, brick, frame, hollow tile, concrete block and other forms of buildings; the foundation required for each; the character and thickness of the walls, varying with the number of stories; specifications for joists, floors, ceiling and roofs, chimneys, flues, and fireplaces, plumbing, and drains; can ordain that within certain limits none but buildings of noncombustible and fireproof roofs shall be erected; and establish many other regulations of great value to the community, which are generally applicable, irrespective of the use to which the building may be put. But the general power to regulate the construction of buildings does not, in our opinion, carry with it, by inference, special authority to regulate their use and occupancy after construction.  The statute authorizing the regulation of building construction is fulfilled by general provisions designed "to prevent the spread of fires and to secure structural and sanitary safety of buildings."  It is undoubted that the State, in the exercise of its police power may adopt regulations limiting the use and occupancy of buildings; and that it may delegate such power to municipalities, or even to townships; but such a grant of power, with its necessary interference with the use and enjoyment of individual property, must be express and definite and not left to inference, nor read into statutes which are capable of reasonable and sensible interpretation without it.  Just how loath courts are to interfere with one's use and enjoyment of his real property, without express statutory authority, may be seen from the case of

Kneedler v. Borough of Norristown, cited above, where the general power to forbid the erection of frame buildings was denied the borough, although the legislature had forbidden such erection within certain limits, (Act of April 7, 1845, P. L. 328, section 8), and boroughs generally were given power "to make regulations relative to the cause and management of fires, and within such limits within the borough as they may deem proper to prescribe" (General Borough Act of 1851, P. L. 322); and from Brice's App., 89 Pa. 85, which was concerned with the Acts of April 21, 1855, P. L. 265, section 6, and of May 7, 1855, P. L. 464, providing for the regulation and inspection of buildings in the City of Philadelphia and requiring certain open spaces to be left in the front and at the side or rear of buildings erected in that city. It was held in that case that the power of the court, under said statutes, was limited to restraining the continuance of work done in violation of them and to ordering the removal or change of so much of the building as might come within the prohibition of the law; "but extends not to controlling the use and enjoyment of it. On the building being made to conform to the law, so that it may remain, the right of the owner to let it to one or to several tenants must remain unimpaired" (p. 89).

A case very similar to this one arose in the State of Missouri: City of St. Louis v. Dorr, 37 S. W. 1108, 136 Mo. 370. An ordinance of the City of St. Louis provided that, "Every person who, as owner, agent, lessee, builder, architect or contractor, shall commence any building in the City of St. Louis or do or cause to be done any work on the same or build the same without first having procured a permit authorizing the same from the commissioner of public buildings shall be deemed guilty of a misdemeanor." Defendant procured a permit to erect a building "to be used as a dwelling." He erected the building according to plans approved by the building commissioner but in course of erection de-

cided to turn the first floor into a storeroom and use the second floor as a residence. The building commissioner thereupon revoked the permit and defendant was charged with violating the ordinance. But the court held that under the ordinance the city could control the construction of a building but not its use thereafter.

In Com. v. Malatsky, 89 N. E. 245, 203 Mass. 241, the Supreme Judicial Court of Massachusetts held that the power of a municipal corporation to regulate the inspection, materials, construction and use of buildings within its limits is not a power which it can exercise independently of legislative authority and the authority given cannot be transcended. See also, City of Buffalo v. Kellner, 153 N. Y. S. 472; People ex rel. Lankton v. Roberts, 153 N. Y. S. 143; Com. v. Corson, 36 Pa. Superior Ct. 7.

We are confirmed in our interpretation of the Act of 1917 by the fact that the general assembly in 1923 passed an act, (Act of June 29, 1923, P. L. 957), "authorizing boroughs and townships of the first class to adopt and enforce zoning ordinances regulating the location, construction, and use of buildings, the size of courts and open spaces, the density of population and the use of land." This act, which is not merely interpretative in character, confers new and extensive powers upon boroughs and townships of the first class and would seem to give them the powers attempted to be exercised by the Township of Lower Merion in the adoption of its several building codes; but that it was deemed necessary to enact legislation specially granting such powers is, to some extent, persuasive that they had not already been conferred.

The assignment of error is sustained and the judgment is reversed.