## In re Falls Township Trailer Ordinance (No. 2)

*Wm. H. Satterthwaite, Jr.,* for appellants.
*Willard C. Curtin,* for respondents.

SATTERTHWAITE, J., January 8, 1954.—As authorized by section 702, clause XLI of the Second Class Township Code, as revised and codified by the Act of July 10, 1947, P. L. 1481, 53 PS §19093-702, clause XLI, the owners of three trailer parks or camps, stipulated to be persons aggrieved, have complained in this court against the legality of an ordinance licensing and regulating trailer parks adopted by the Supervisors of Falls Township on August 12, 1952. Although the complaint and an answer thereto were timely filed, for reasons not apparent to the court the matter did not come on for hearing until March 20, 1953, and briefs were not filed until July 7, 1953, and December 7, 1953, respectively. The appeal is now finally ripe for decision.

The first section of the ordinance in question contains definitions; the second, third and fourth require and make provision for licenses for trailer parks; the fifth and sixth create and define the duties of a "Park Inspector" to administer the ordinance. Sections 7 through 31 set forth the specifications and regulations for trailer parks, covering such matters as location,

over-all area, occupied and open area requirements for individual trailer sites, automobile parking, size and maintenance of driveways, lighting facilities, sewage and garbage disposal systems, fire protection devices, electrical service outlets, location and particular specification of service buildings and the sanitary and other facilities to be provided therein, control of domestic animals, register of occupants, and other similar provisions. Section 32 contains a severability clause and provides penalties, and section 33 is a general repealer.

The occasion for this ordinance is quite apparent. As of a date prior to the hearing in this case, Falls Township had 335 house trailers within its limits, most of which were located in 19 trailer parks subject to the ordinance, in numbers varying from 2 to 48 per park. The extraordinary and unprecedented industrial expansion and other activity in the area and the consequent sharp limitation of housing facilities, particularly for those of limited financial means or those whose employment in the construction industry requires their presence for temporary (but not necessarily short) periods of time, quite obviously attract these mobile, modern-day housing units in great numbers. The result has been a series of colonies of trailers, lacking any substantial degree of permanence of location, and containing sanitary and other types of conveniences which, although for the most part quite modern, comfortable and satisfactory within themselves, are necessarily dependent upon facilities provided for them, not by public authority, but by other private individuals and beyond the control of the trailer occupant. Such a peculiar and unusual nature of occupancy, together with the concentration of relatively large numbers of persons living in close proximity to each other for greater or lesser periods of time, would necessarily pose a threat to the health and safety of the inhabitants of the township as a whole in the absence of reasonable

safeguards as to sewage disposal, fire protection, and other similar matters. Unfortunately, probably because of the divided areas of responsibility and control, human nature predicts, and actual experience in Falls Township demonstrates, that even minimum precautions to guard against such matters may sometimes not be taken, either by the trailer occupants, who apparently have no real concern about or control of the situation surrounding them, or by some less conscientious or even irresponsible trailer camp operators who can apparently rent their trailer sites without too much conscience as to the services provided in view of present local conditions and demand. What is everyone's concern has in some cases, as often is true, turned out to be the concern of none.

We therefore must reject complainants' contention that the supervisors have no power to enact this type of ordinance since the local situation would seem to justify them in so doing, a matter for their determination, and they do have express authority, under section 702, clause XXIX, of the Second Class Township Code, supra, "to make such regulations, by ordinance, not inconsistent with State laws and regulations, as may be necessary for the promotion of the health, cleanliness, comfort and safety of the citizens of the township".

To the degree reasonably necessary for these purposes, the supervisors do have the right and duty, not under their inherent police powers as they contend, but pursuant to and hence limited by this express statutory provision, to impose standards and regulations for both the occupants of the trailers and those making a business of catering to them.

It does not follow, however, that they may create restrictions and conditions which, while both they and the courts may think desirable, are not reasonably necessary for the purposes stated in the statute. The

within ordinance, in our opinion, in several respects as pointed out by complainants, and possibly in others not specifically mentioned, does go beyond such limitations and, to the extent hereinafter mentioned, is invalid in part as constituting an unreasonable, unlawful and unauthorized interference with the right of private property.

Although the supervisors apparently do not now rely thereon, it is obvious that this ordinance was drawn as a purported exercise of the powers given them by section 702, clause LI, of the Second Class Township Code authorizing them to regulate and govern "construction, alteration, repairs, occupation, maintenance, sanitation, lighting, ventilation, water supply, toilet facilities, drainage, use and inspection of *all* buildings or parts of buildings constructed, erected, altered, designed, or *used in whole or in part for human habitation,* and of the sanitation and inspection of land appurtenant thereto". (Italics supplied.)

A house trailer is undoubtedly a dwelling and hence subject to a generally applicable building code: Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572; Commonwealth v. McLaughlin, 168 Pa. Superior Ct. 442, nevertheless, this legislation is no authority for singling out merely one type of abode since it authorizes only the regulation of *all* dwellings within the township. Particularly is this true since no authority is conferred even to classify particular types of uses in this statutory provision. Compare Lower Merion Township v. Harrison, 84 Pa. Superior Ct. 574. It is clear that the legislative grants of power, including the police power, are especially restricted in the case of second class townships: Falls Township Trailer Ordinance Case, 84 D. & C. 199.

Palumbo Appeal, 166 Pa. Superior Ct. 557, and Cloverleaf Trailer Sales Company v. Pleasant Hills Borough, 366 Pa. 116, both involving a somewhat similar borough ordinance under substantially the same legis-

lative provision as clause LI, are not inconsistent with these views for the simple reason that the trailer ordinance there in question was adopted contemporaneously with and as a concomitant incident of a generally applicable sewage ordinance. Judge Hirt in the Palumbo opinion expressly pointed out, at page 564, that the power vested in the borough by such legislation was general and not specific except as to *over-all* subject matter. See also Francis v. Neville Township, 372 Pa. 77, 79, holding similarly that legislation authorizing a general pension system for retired municipal employes did not permit a single pension for one particular and named individual only.

We conclude, therefore, that this ordinance must be considered under the powers given second class townships by section 702, clause XXIX, only, and that clause LI cannot be availed of to sustain its validity in whole or in any particular part. It follows that such provisions of this ordinance as are reasonably necessary to control matters which may justifiably be said to affect the public health, cleanliness, comfort and safety are valid; such provisions thereof as go beyond these limitations, even though possibly desirable, are invalid as unauthorized.

Complainants' principal objections to the ordinance in question relate to sections 20 to 25, inclusive, which require every trailer park, regardless of the nature of the trailers which occupy it and the consequent need therefor, to have a precisely specified and equipped service building containing detailed sanitary facilities for the patrons of the establishment. Such requirements are made, as a minimum, even though other sections of the enactment compel the furnishing of adequate sewerage connections and disposal from each trailer, and also realistically recognize the inherent difference between "independent" trailers (defined in section 1 as those having a flush toilet and bath or

shower therein) and "dependent" trailers (defined as those not having such conveniences), the ordinance specifying in section 22 additional facilities required above the minimum where the latter type trailers are involved. As applied to parks containing independent trailers only (practically the only type in use today in any number), these sections appear arbitrary and without any reasonable relationship to the public health and safety. It is doubtful that such service buildings would be used in view of the conveniences provided by the independent trailers themselves. No good reason for the duplication of sanitary facilities already available and generally more preferable has been made to appear. Since complainants Veisz and Lovett accept and accommodate independent trailers only they quite obviously would be damaged by being required to erect and maintain these unnecessary facilities at an undisclosed but undoubtedly substantial expense to them. Hence they have standing to complain, and sections 20 to 24, inclusive, must be held invalid insofar as they relate to trailer parks accommodating only independent trailers.

Complainant Mara, on the other hand, does accept some dependent trailers in her place of business. Since they, by definition, do lack self-contained sanitary facilities, the public health and safety would seem to require her to furnish the same. As to her, and other trailer park operators within the township who may also serve the comparatively few dependent trailers still in use, we cannot say that the general requirement of a service building and sanitary facilities therein is unreasonable or arbitrary in principle. In fact, she does already furnish such accommodations and we cannot ascertain from this record in what particulars the ordinance would require anything further of her or what the burden thereof might be. We therefore believe that sections 20 to 24, inclusive, have not been

shown to be unreasonable and are prima facie valid as to trailer parks catering to dependent trailers.

Section 25 needs special mention. It requires a separate toilet bowl *for each sex*, in a totally separate part of the service building, with convenient hot water supply, to be used solely for emptying waste matter or rinsing garbage cans. Apart from the purely capricious requirement that there be two of these provided, one for each sex, it seems that this section likewise involves a duplication of conveniences already otherwise available either in the independent trailers themselves or in other parts of the service building for dependent trailers. No sound reason for singling out trailers only in making this regulation, which would be just as *desirable* in all residences in the township, has been made to appear, nor does it seem reasonably necessary in the interests of public health. Accordingly, section 25 is totally invalid.

Complaint is also made in these proceedings of sections 9 and 10 of the ordinance relating to the location of trailer sites within the park. Section 8 requires that each site be at least 25 feet in width and 40 feet in length. As we understand it, complainants already comply therewith in a general way and no objection to this regulation is now made. Mr. Veisz, however, has four trailer locations which, although of the required area content, are only 15 feet from a public highway. If, as is apparently the case, more than 30 feet of the length of the site is occupied by the trailer, such occupancy would be contrary to section 9 of the ordinance which requires a minimum distance of 25 feet from the parked trailer to a public street, roadway, highway or alley. He therefore contends that section 9 is arbitrary and unreasonable as to him and that compliance therewith will not only necessitate the relocation of existing cesspools, water lines and concrete patios or paved areas, but also oblige him because of

the layout of his park either to give up some trailer sites entirely or to violate section 12 of the ordinance specifying that driveways be 20 feet in width. Mrs. Mara testified to a somewhat similar situation at her trailer park. Both establishments were in operation many months prior to the enactment of the ordinance.

Under these circumstances, we believe that considerations of public safety, the only basis upon which this set-back regulation can be founded, are not so demanding and impelling as to require the substantial modification pointed out by Mr. Veisz. While considerable stress was laid upon the number of children who live in these trailers, we doubt that any substantially greater protection will be provided for their safety by a 25-foot setback as contrasted with one only 15 feet from the public thoroughfare. We therefore believe that section 9 is unreasonable insofar as it is applicable to trailer parks which, at the effective date of the ordinance, contained substantial commitments not in compliance therewith so that not inconsequential hardship would be visited upon the operators thereof if the provision be enforced against them. Whether such regulation would be valid as to parks opened after the adoption of the ordinance, or where compliance would not involve substantial burdens upon the operators is not decided, although it prima facie would seem within the supervisors' powers. In passing, it may be noted that both the Veisz and Mara trailer camps in another respect constitute what might be termed "nonconforming uses" under the very terms of this ordinance were this a zoning case, neither containing an over-all area of one acre as required by section 8 which expressly relates only to trailer parks subsequently opened. We believe that this recognition of preëxisting conditions and special circumstances in avoidance of hardship should be extended, in achieving reasonableness of regulations, at least in this set-back provision. Whether

this principle might also apply in other connections is expressly reserved.

We see no merit on the present record in complainants' further objection that section 10 is also invalid in stipulating that each trailer site must abut or face either a driveway *or* a clear, unoccupied space of not less than 16 feet in width having access to a public highway. Whether this provision is within the power of the supervisors to make and enforce need not be decided as none of the within complainants appear to be adversely affected thereby. All their sites open onto driveways. Furthermore, in view of the disjunctive "or", no conflict or inconsistency between these requirements and those of section 12, as they contend, really exists. Section 10 may be complied with by having sites abut a driveway, the width of which is determined by section 12, or by locating the same to face a 16-foot wide open space having the required access. These provisions are clearly in the alternative and are not interrelated.

The objection to section 13, requiring the all-night lighting of trailer parks, as we understand it, has been abandoned and need not be considered.

Any other objections to this ordinance, not having been specifically raised in these proceedings, are expressly reserved for such future disposition as may be required.

Since these proceedings have been considered by the undersigned only, an opportunity should be furnished the parties in interest to bring the matter before the court en banc. Accordingly, the following is entered as an

### Order Nisi

And now, January 8, 1954, for the reasons hereinabove given, it is ordered that the within appeal from or complaint against the ordinance of the Supervisors of Falls Township enacted on August 12, 1952, and relating to house trailer parks, be and hereby is sus-

tained and allowed insofar as it relates to the following provisions of the ordinance, which are hereby declared invalid to the extent indicated:

1. Sections 20 to 24, inclusive, thereof are invalid in toto as applied to trailer parks accommodating, harboring, storing and parking independent trailers only, within the meaning of the ordinance.

2. Section 25 thereof is invalid in toto.

3. Section 9 thereof is invalid to the extent it prohibits the parking of trailers within 25 feet of a public street, roadway, highway or alley, but only insofar as such prohibition relates to the parks of complainants, Joseph Veisz and Dorothy Veisz and Catherine Mara, respectively, or to other parks existing and in operation prior to the effective date of the ordinance under substantially the same circumstances as those of complainants, as hereinabove more fully mentioned.

It is further ordered that in all other respects the appeal or complaint be and hereby is dismissed and disallowed.

This order shall become the final order of the court unless exceptions be filed hereto within 20 days from this date.

Each party shall bear his or their own costs.