## DWIGHT F. KILGOUR *vs.* WILLIAM GRATTO.

### Middlesex.    January 19, 1916. — May 16, 1916.

### Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Municipal Corporations,* By-laws and ordinances, Officers and agents. *Nuisance. Mandamus. Words,* "By-laws."

In St. 1913, c. 655, § 1, providing that every city and town, except Boston, which accepts the provisions of the statute, "may, for the prevention of fire and the preservation of life, health and morals, by ordinances or by-laws not inconsistent with law . . . regulate the inspection, materials, construction, alteration, repair, height, area, location and use of buildings and other structures within its limits," the word "by-laws" means general rules which shall afford some standard of conduct to the landowner so that he may know where to locate, how to design, construct, equip and otherwise prepare for use his proposed building, and some principle to direct the licensing board as to the exercise of their judgment and discretion in granting or denying a permit.

A town is not given power or authority by St. 1913, c. 655, § 1, to adopt and enforce a by-law vesting in its selectmen the power in their absolute and uncontrolled discretion to refuse permission to erect a factory, however perfect in design, non-combustible in material, and safe and sanitary in equipment; and if, purporting to act under authority given by such a by-law, the selectmen refuse for no stated reason to grant permission for the erection of a factory which in every way conforms in design, material, safety and sanitary provisions to standards set by the town in an elaborate and comprehensive code of building by-laws, a writ of mandamus should issue to compel the granting of a permit.

Enumeration by RUGG, C. J., of classes of cases illustrating the regulation, that properly may be delegated to the discretionary supervision of a local board, of occupations and of uses of property which may create nuisances.

RUGG, C. J. This is a petition for a writ of mandamus to compel the building inspector of the town of Lexington to issue a permit for the construction of a one story building of cement blocks and brick upon the petitioner's land in Lexington, to be used as a drafting-room and mechanical laboratory or workshop, to contain some small machinery for the making of models and devices for testing, developing and illustrating his inventions; but manufacturing is to be carried on to a slight extent only, the maximum of workmen being four. Power is to be furnished by an electric motor. The department to which the petitioner's inventive skill

is directed is not stated. It has been found * in substance that
·as a rule there is greater danger of fire, explosion or other like acci-
dent in a building used as a factory where a dynamo for motive
power is set than in other buildings such as dwelling houses, with
reference not only to the building itself but to other buildings in
the vicinity, and that sometimes danger to the health of dwellers
in neighboring buildings may be increased, by the location of a
factory, beyond that which would be caused by a dwelling house,
and that there are other buildings mostly of wood in close proxim-
ity to that proposed to be erected by the petitioner. There is no
finding as to the danger in any particular respect which the peti-
tioner's proposed building would be likely to cause.

The town of Lexington accepted the provisions of R. L. c. 104,
which was the corresponding provision of the earlier law now em-
bodied in St. 1913, c. 655. Section 1 of that act, so far as here
material, is in a footnote, the additions to the words of the earlier
statute being in italics.† Pursuant to the authority of the latter
statute, the town adopted an elaborate and comprehensive code
of building by-laws. The pertinent provisions of that code ‡ in
brief are that no building shall be erected for use as a factory with-
out a permit countersigned by the selectmen. The petitioner's

---

* By *Pierce*, J., by whom the petition was heard, and who, having ordered
that the writ should issue, at the request of the respondent reported the
case for determination by the full court.

† "Every city, except Boston, and every town which accepts the provisions
of this section or has accepted the corresponding provisions of earlier laws
may, for the prevention of fire and the preservation of life, *health and morals*,
by ordinances or by-laws not inconsistent with law and applicable throughout
the whole or any defined part of its territory, regulate the inspection, ma-
terials, construction, alteration, *repair, height, area, location* and use of build-
ings and other structures within its limits, except . . ."

‡ "Article III. Definitions . . . Factory. Any premises where steam,
water or other mechanical power is used in aid of any manufacturing process
there carried on."

"Article X. Section 5. No buildings to be used as a factory, or for the
manufacture of explosives, or for chemical or rendering works or stable in
which more than four horses are kept, shall be erected, and no steam or gas
engine, dynamo or boiler for motive power, shall be set or erected or moved
without a permit from the Inspector, countersigned by the Board of Select-
men, and such permit shall not be granted until after a public hearing before
the Selectmen. . . ."

proposed building is a factory within the code, because electrical power is to be used in aid of manufacturing processes to a small extent. The plans and detailed descriptions of the petitioner's proposed building in all structural respects conform fully to the requirements of the by-laws, which in this regard contain many minute regulations. But the selectmen refuse to grant the permit and no reason therefor is assigned in the record.

The effect of the by-laws is to vest in the selectmen an absolute and uncontrolled discretion whether to grant or to refuse a permit for the construction of a building like that proposed by the petitioner anywhere within the limits of the town.

The business proposed to be carried on by the petitioner is as harmless as can well be imagined of any manufacturing enterprise. It is a lawful business. The use of inventive skill is a close approach to the exercise of a natural right. In essence it is simply working toward useful ends according to the measure of one's innate endowments. The material and structure of the building confessedly satisfy the exacting requirements of the by-laws. The motive power proposed to be installed commonly is supposed to be as clean, healthful and free from danger under proper regulations as any now available. The construction and use of factories for manufacture at some place are necessities of present conditions of life. The question presented is whether the Legislature has authorized the passage by towns of by-laws which subject the right of everybody to construct a factory building to the unrestrained permission of local officers.

While the terms of St. 1913, c. 655, in some respects are broader than those of earlier statutes, in that under it the municipality may enact by-laws for the preservation of "health and morals" and may regulate the "repair, height, area, location" of buildings, they still must confine their regulations in this respect to "by-laws." "By-law," as applied to the subject matter, means a general rule. It should afford some standard of conduct to the landowner so that he may know where to locate, how to design, construct, equip and otherwise prepare for use his proposed building, and some principle to direct the licensing board as to the exercise of its judgment and discretion in issuing or denying the permit. A provision that the right to erect a factory, however perfect in design, non-combustible in material, safe and sanitary in equip-

ment, cannot be exercised without permission from local officers not enlightened, directed or curbed by any established principle, is not in a proper sense a by-law as that word is used in this statute.

Of course a wide power exists as to the regulation of harmful and noxious occupations and the location and erection of buildings for uses which either are inherently or easily may become nuisances. It is to be presumed that the legislative delegation of discretionary power respecting such buildings and businesses is broad. The keeping of swine, *Quincy* v. *Kennard*, 151 Mass. 563, the blasting of rock, *Commonwealth* v. *Parks*, 155 Mass. 531, the business of storing rags in thickly settled parts of a city, *Commonwealth* v. *Hubley*, 172 Mass. 58, the location of livery stables, *Newton* v. *Joyce*, 166 Mass. 83, *Reiman* v. *Little Rock*, 237 U. S. 171, the establishment of dairy and cow stables within a great city, *Fischer* v. *St. Louis*, 194 U. S. 361, and the construction of garages, *Storer* v. *Downey*, 215 Mass. 273, all have been held to relate to such matters as may be within the discretionary supervision of a local board.

But the statute has been held not to allow the enactment of ordinances or by-laws vesting entire and unregulated discretion in local officers respecting the construction, alteration and use of all buildings, *Newton* v. *Belger*, 143 Mass. 598, the erection and use of buildings for general manufacture, *Winthrop* v. *New England Chocolate Co.* 180 Mass. 464, and the erection of buildings for mercantile uses, *Goldstein* v. *Conner*, 212 Mass. 57. The case at bar is indistinguishable from these and is governed by them.

The change in the statute since their decision does not touch this aspect of the matter. The instant by-law does not undertake to regulate the location of factories by any general rule. The principles controlling this and kindred subjects have been fully discussed in recent cases and need not be restated. *Commonwealth* v. *Maletsky*, 203 Mass. 241. *Belmont* v. *New England Brick Co.* 190 Mass. 442. *Durgin* v. *Minot*, 203 Mass. 26. *Commonwealth* v. *McGann*, 213 Mass. 213. *Burke* v. *Holyoke Board of Health*, 219 Mass. 219. *Yick Wo* v. *Hopkins*, 118 U. S. 356. *Hadacheck* v. *Sebastian*, 239 U. S. 394. The trend of decisions in other jurisdictions goes at least as far and perhaps beyond any of our own adjudications in restricting the validity of similar by-laws. *Montgomery* v. *West*, 149 Ala. 311. *Sioux Falls* v. *Kirby*,

6 So. Dak. 62. *Richmond* v. *Dudley,* 129 Ind. 112. *Boyd* v. *Council of Frankfort,* 117 Ky. 199. *State* v. *Tenant,* 110 N. C. 609. See Dillon, Mun. Corp. (5th ed.) §§ 596, 598, 600.

*Writ to issue.*

R. P. *Clapp,* (H. W. *King* with him,) for the petitioner.
S. R. *Wrightington,* for the respondent.