RICHARD D. BUTLER & another *vs.* TOWN OF EAST BRIDGE-
WATER & others.

Plymouth. November 7, 1952. — March 2, 1953.

Present: QUA, C.J., LUMMUS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Municipal Corporations,* By-laws and ordinances. *Regulation. Permit. Real Property,* Removal of soil. *Quasi Judicial Tribunal. East Bridgewater. Declaratory Judgment. Equity Jurisdiction,* Declaratory relief.

A by-law of the town of East Bridgewater forbidding the removal of soil, loam, sand or gravel from any land in the town not in public use unless by a permit issued by the selectmen after public hearing, except in conjunction with construction of a building or continued operation of an existing sand and gravel pit on the land, was a proper exercise of the authority granted to the town by cl. 17 added to G. L. (Ter. Ed.) c. 40, § 21, by St. 1949, c. 98, and was valid without particularization of standards for granting or refusing such permits. [36–37]

A provision of a by-law adopted by the town of East Bridgewater under cl. 17 added to G. L. (Ter. Ed.) c. 40, § 21, by St. 1949, c. 98, that no person should "remove" soil, loam, sand or gravel from land without a permit except in certain circumstances, applied to severing such materials from the land as well as to conveying them away therefrom. [38]

Selectmen charged by a town by-law with the duty of deciding, after public hearing, applications for permits to remove soil, loam, sand or gravel from land must act in a fair, judicial and reasonable manner upon the evidence presented to them. [38]

In a suit for a declaratory decree under G. L. (Ter. Ed.) c. 231A by a landowner against a town and its selectmen involving a by-law adopted by the town under cl. 17 added to c. 40, § 21, by St. 1949, c. 98, and prohibiting, with certain exceptions, the removal of soil, loam, sand

or gravel from premises without a permit issued by the selectmen after public hearing, action of the selectmen denying the plaintiff a permit for the removal of such materials could not be declared unwarranted in law where the evidence presented to the selectmen in the matter was not before the court. [39]

If loam was stripped from and piled upon a parcel of land in a town before the taking effect of a by-law adopted by the town under cl. 17 added to G. L. (Ter. Ed.) c. 40, § 21, by St. 1949, c. 98, and prohibiting, with certain exceptions, the removal of loam and other materials from any premises without a permit issued by the selectmen, it would be arbitrary and unreasonable for the selectmen to refuse the owner of such parcel a permit to remove the piled loam therefrom. [40]

Selectmen of a town who had denied a landowner a certain permit required by a by-law of the town had power, if they saw fit, to revoke the denial and to reconsider the landowner's application for the permit in the light of an opinion by this court in a suit for a declaratory decree by the landowner wherein this court, although holding that the denial could not be declared invalid on a record not containing the evidence originally before the selectmen in the matter, indicated that in certain circumstances, if found by the selectmen to exist, the permit ought to be granted and its denial would be arbitrary and unreasonable. [40]

BILL IN EQUITY, filed in the Superior Court on May 24, 1950.

The suit was heard by *Warner*, J.

*Robert E. McCarthy*, for the defendants.

*Maurice J. Murphy & Henry C. Gill*, for the plaintiff Butler, submitted a brief.

QUA, C.J.  This suit was originally brought by Butler against the town and its selectmen.  One Merry was allowed to intervene as a plaintiff on the ground that he was a landowner in the town who had problems similar to those of the original plaintiff.  No question has been raised as to his right to intervene.

The suit is brought under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for a decree declaring the rights of the plaintiffs in the matter of removal of loam from tracts of land in the town owned respectively by them. The defendants have appealed from a final decree [1] favorable

---

[1] Two papers appear to have been filed, each entitled as a decree, of which one dealt with the rights of Butler and the other with the rights of Merry. Both papers, however, bear the same date and were filed the same day.  There was no occasion for two decrees.  We treat both papers as together constituting the final decree in the cause.

to the plaintiffs. The evidence received in the Superior Court is reported.

By St. 1949, c. 98, the Legislature amended G. L. (Ter. Ed.) c. 40, § 21, by adding to the list of purposes for which towns might make by-laws the following: "(17) For prohibiting or regulating the removal of soil, loam, sand or gravel from land not in public use in the whole or in specified districts of the town."[1] Thereafter East Bridgewater adopted a by-law designated as Article 22, Section 1, which reads as follows: "No person shall remove any soil, loam, sand or gravel from any land in the town not in public use unless such removal is authorized by a permit issued by the board of selectmen, except in conjunction with construction of a building on the parcel and except for the continued operation on the same parcel of an existing sand and gravel pit. No such permit shall be issued until an application therefor is filed with said board, said board shall hold a public hearing on the application and notice of the filing of such application and the date and time of the public hearing thereon shall be advertised in a paper published in the county, seven days at least before the public hearing."

The plaintiff Butler claims to be the owner of about fifty-two acres of land, and the plaintiff Merry claims to be the owner of about one hundred fifteen acres. Each plaintiff applied to the selectmen for a permit under the by-law, and each application was denied on the stated ground that "the land in the petition has been used solely for agricultural purposes and the removal of loam from the premises would cause irreparable injury to the premises so as to render them unsuitable for that purpose." The plaintiff Butler asserts that his design is to develop his tract for sale in house lots, and that all the loam which he seeks to take away from the land was stripped in connection with his development and piled on the land before the by-law took effect. The plaintiff Merry asserts that his design is to improve his tract for agricultural purposes by draining

[1] A further amendment by St. 1951, c. 352, affecting only the penalty is not material in this case.

Butler *v.* East Bridgewater.

it and respreading the loam, and that such sales of loam as he has made and desires to make are incidental to that purpose. He also asserts that he has piled upon his land loam that was stripped before the by-law took effect. Both plaintiffs testified, however, that they were contractors engaged in the business of making lawns.

It is evident that the general purpose of the statute and the by-law was to regulate the stripping of top soil so as to prevent the injurious effects brought about by the creation of waste areas which have been the subject of litigation in such cases as *Lexington* v. *Menotomy Trust Co.* 304 Mass. 283, *North Reading* v. *Drinkwater,* 309 Mass. 200, *Burlington* v. *Dunn,* 318 Mass. 216, *Billerica* v. *Quinn,* 320 Mass. 687, *Seekonk* v. *John J. McHale & Sons, Inc.* 325 Mass. 271, and *Wayland* v. *Lee,* 325 Mass. 637, 644. That it is constitutional to restrict the use of land in this manner was established by *Burlington* v. *Dunn,* 318 Mass. 216, 220–223, certiorari denied sub nomine *Dunn* v. *Burlington,* 326 U. S. 739.

The cases just cited, except the *North Reading* case, were cases in which the regulation was accomplished by means of a zoning by-law. The purpose of the 1949 amendment to the statute was to enable municipalities to regulate the removal of soil, loam, sand, or gravel without setting up any zoning system. This had previously been held in the *North Reading* case beyond the power delegated to them under the statutes as they formerly existed. We understand that the questions raised are whether the by-law is valid as a reasonable exercise within the enabling act of the power intended to be conferred upon the town, and, if it is, whether the action of the selectmen in denying permits was a valid exercise of the power conferred upon the selectmen by the by-law.

We see no substantial reason to doubt the validity of the by-law. The enabling act was in general terms and provided for "prohibiting or regulating." The town decided upon "regulating" by requiring a permit from the selectmen except where the removal of soil, loam, sand, or gravel was in conjunction with the construction of a building or the continued operation of an existing sand or gravel pit. In-

stead of attempting to describe in advance all possible conditions under which soil could properly be removed without substantial injury to the public interest the town chose to invest its selectmen with quasi judicial authority to determine the facts and to pass upon the application in each instance under the serious sense of responsibility imposed upon them by their official positions and the delicate character of the duty entrusted to them. We do not think that greater particularity was required in the by-law. It would have been difficult, if not impossible, to specify in what circumstances permits should be granted and in what circumstances denied. Each case must depend upon its particular facts. The manifest objects of the enabling act and of. the by-law furnish in themselves a large measure of guidance. In our opinion this case is to be distinguished from cases where an attempt has been made to delegate to some official what practically amounts to the unrestrained power of life or death over the right to engage in some lawful, useful, and generally harmless occupation not otherwise prohibited. *Commonwealth* v. *Maletsky*, 203 Mass. 241. *Goldstein* v. *Conner*, 212 Mass. 57. *Kilgour* v. *Gratto*, 224 Mass. 78. In this case there is involved a use of land which, if not in itself a nuisance, has been shown by experience to be likely to produce conditions bordering upon a nuisance. In recognition of that fact the Legislature passed the enabling act and gave the town authority not merely to regulate the use but to prohibit it altogether. The town stopped short of prohibition (*Commonwealth* v. *Davis*, 162 Mass. 510, 512) and instead.adopted a commonly used method of regulation by requiring a permit in terms similar to those employed and held valid in various comparable instances. *Commonwealth* v. *Plaisted*, 148 Mass. 375. *Quincy* v. *Kennard*, 151 Mass. 563. *Commonwealth* v. *Parks*, 155 Mass. 531. *Commonwealth* v. *Ellis*, 158 Mass. 555. *Newton* v. *Joyce*, 166 Mass. 83. *Commonwealth* v. *Hubley*, 172 Mass. 58. *Storer* v. *Downey*, 215 Mass. 273. *General Baking Co.* v. *Street Commissioners of Boston*, 242 Mass. 194. *Commonwealth* v. *Kimball*, 299 Mass. 353, 359. *Building Commissioner of*

*Medford* v. *C. & H. Co.* 319 Mass. 273, 275, 280–282. The reference in *North Reading* v. *Drinkwater*, 309 Mass. 200, at page 204, to *Goldstein* v. *Conner* was made before soil stripping was classified by the Legislature by St. 1949, c. 98, as an activity which towns could prohibit.

A question has arisen whether the words of the by-law "remove any soil, loam, sand or gravel from any land" are to be construed as referring to the original stripping or digging or to the ultimate conveying away from the premises. Similar words occur in the enabling act. We think the intent was to authorize towns to control the entire process of severing the material and conveying it from the premises, and that the defendant town intended to occupy the entire field with its by-law.

The next question is whether the decisions of the selectmen in denying the permits were valid. It was their duty to act in a fair, judicial and reasonable manner upon the evidence as presented to them, keeping in mind the objects of the by-law. They could not act in an unreasonable, arbitrary, whimsical, or capricious manner. *Commonwealth* v. *McGann*, 213 Mass. 213, 215. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 192. There are, no doubt, numerous possible combinations of circumstances, where no building is to be erected and no sand or gravel pit is in operation but where the selectmen ought to grant a permit, and where possibly their refusal to do so would be found unwarranted. A landowner might, for example, desire to construct streets, walks, driveways, a parking lot, or a tennis court, or even to grade his land for better use, and some removal of soil might be necessary and harmless. In such case it might be the duty of the selectmen to grant the permit. The effect upon the availability of the land for agricultural purposes would not be a universal test but in some circumstances might be the decisive factor. Under the by-law the decision in the first instance rests with the selectmen. If the amount of soil to be removed is more than such a trivial amount that the law will not consider it, the owner must apply for the permit in

order that the selectmen may decide. *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373, 376. *Malden* v. *Flynn,* 318 Mass. 276, 280–281. *M. Doyle & Co. Inc.* v. *Commissioner of Public Works of Boston,* 328 Mass. 269, 271–272. *Kidder* v. *City Council of Brockton,* 329 Mass. 288, 290–291.

In the case before us we have no means of determining that the refusals of the selectmen to grant permits were not warranted by the evidence before them and the findings they made. The voluminous evidence contained in the record and the elaborate findings of the judge do not greatly help us. The court could not substitute itself for the selectmen. The evidence heard by the selectmen could have been brought before the court by means of returns in petitions for writs of certiorari, and the court could then have decided, not whether as a matter of policy permits ought to issue, but whether the selectmen's refusal of them was unwarranted in law. G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374. For aught we know the evidence before the selectmen may have presented a picture very different from that presented by the record before us. The selectmen may have warrantably refused to believe that these two contractors whose work included the building of lawns were really engaged in the improvements they claimed to be making on their properties. The selectmen may have believed that these two operations were ordinary loam stripping operations which properly fell within the ban of the by-law. *Seekonk* v. *John J. McHale & Sons, Inc.* 325 Mass. 271, 273.

So much expense has been incurred in trying this case, preparing the record and arguing the appeal that we feel under an obligation to carry this discussion as far as may be done with a reasonable prospect of bringing the controversy to an end, while still keeping within the very broad limits of declaratory relief as defined in G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1. We therefore think it proper to add that, although the plaintiffs are bound by the by-law, and although we cannot on this record declare invalid the action of the selectmen in refusing per-

mits, we are nevertheless of opinion that if the selectmen believed the assertions of the plaintiffs that before the by-law became effective they cut and piled loam upon their lands, the refusal to grant permits to carry such loam away was unreasonable and arbitrary and not authorized by the by-law, and upon that postulate it was their duty to grant permits for its removal from the premises. In the circumstances supposed the acts of the plaintiffs upon their own lands would have been entirely lawful and innocent when performed. The loam is valuable property for which there is a demand. We know of no means by which the plaintiffs can be required to spread it again upon their lands. It may be that to do so would be an uneconomic waste. No public purpose is served by keeping this loam[1] forever piled where it encumbers the land and is withdrawn from all use, while the owners suffer financial loss. It would not be injurious to the public welfare to allow it to be removed from the lands in a proper manner. *Pittsfield* v. *Oleksak,* 313 Mass. 553, 555 – 556. *122 Main Street Corp.* v. *Brockton,* 323 Mass. 646, 650–651. *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 445. Very different considerations would apply in the case of loam excavated after the by-law became effective.

We are further of opinion that it is within the power of the selectmen, if in the light of this opinion they think justice requires it, to revoke their action in denying permits and to reconsider the matters involved.

The final decree is reversed in its application to both plaintiffs, and a new final decree is to be entered declaring that the by-law is valid and governs both the stripping of loam and its conveyance away from the premises of the plaintiffs; that neither plaintiff has a right to convey loam from his premises without a permit from the selectmen; that, in the absence of considerations not disclosed on this record, permits ought to be granted for the carrying away

---

[1] The judge found that 10,000 cubic yards of loam was piled upon the Butler land. There was evidence that it was worth $10,000, but that it was deteriorating. The amount on the Merry land was much less.

of any loam cut before the by-law took effect; and that the selectmen have the power, if they see fit, to revoke their action in denying permits and to reconsider the applications.

*So ordered.*