MARY F. OWENS & others *vs.* BOARD OF APPEALS OF BELMONT (and a companion case). April 6, 1981. These actions sought to annul a variance and a special permit granted to Moore Homes, Inc. (Moore Homes), by the board of appeals of the town of Belmont (board) under the provisions of the Belmont zoning by-law and G. L. c. 40A, as appearing in St. 1975, c. 808, § 3. The variance, granted on September 15, 1979, authorized Moore Homes to convert a seriously dilapidated mansion known as the "Underwood-Davis Estate" into six condominium units with related facilities. The special permit, granted on April 11, 1980, authorized construction of a cluster development on the same property pursuant to a "Cluster Development Amendment" adopted by the voters of the town on November 19, 1979. See G. L. c. 40A, §§ 2 and 9. The relief granted by the special permit involved substantially the same physical alterations and additions as authorized by the variance and included permission to construct some additional dwelling units. Following consolidation of the cases for trial, determinations were made in the Superior Court that all but one of the plaintiffs (Domenico R. Mauro) lacked standing to challenge the board's actions, and the case proceeded to trial with Mauro as the sole plaintiff. After trial, a judge filed a comprehensive memorandum in which he concluded that the board had acted properly in granting both the variance and the permit. A single judgment entered dismissing both actions, from which cross appeals have been taken. These appeals may be resolved upon a consideration solely of the questions raised with respect to standing and with respect to the propriety of the special permit.

1. The various plaintiffs who were dismissed from the actions assert that they had demonstrated the requisite standing to pursue their challenges to the board's decisions. We are satisfied that the judges who passed on this question properly determined, on undisputed facts, that these plaintiffs were owners of property lying some distance away from

the site (see *Bradshaw* v. *Board of Appeals of Sudbury*, 346 Mass. 558, 560 [1963]), that they had nothing more than a "general civic interest in the enforcement of the zoning ordinance" (*Waltham Motor Inn, Inc.* v. *LaCava,* 3 Mass. App. Ct. 210, 218 [1975]), and that, as a result, they were not "person[s] aggrieved" within the meaning of G. L. c. 40A, § 17, as amended by St. 1978, c. 478, § 32. See *Waltham Motor Inn, Inc.* v. *LaCava, supra* at 214-215, 218; *Rafferty* v. *Sancta Maria Hosp.*, 5 Mass. App. Ct. 624, 626 (1977). See also *Amherst Growth Study Comm.* v. *Board of Appeals of Amherst,* 1 Mass. App. Ct. 826, 827 (1973). Mauro's standing rested on a different footing. He is a nearby property owner and he apparently received notice of the proceedings under G. L. c. 40A, § 11, either as an abutter to the project or as an abutter to such an abutter. He established facts from which it could be inferred that he might incur tangible harm as a result of the project's development, and he asserted an interest in having the residence district in which he owns property preserved as a single-family district. See *Rafferty* v. *Sancta Maria Hosp., supra* at 629-630, and cases cited. We cannot say that the judge's ruling that Mauro was a person aggrieved was erroneous. See *Marotta* v. *Board of Appeals of Revere,* 336 Mass. 199, 204 (1957).

2. The plaintiff contends that the special permit is invalid because the by-law provisions which authorize the construction of multi-family cluster developments conflict with, and are overridden by, the by-law's general use provisions, which call for single family residences in this zone. The "Cluster Development Amendment" to the Belmont by-law was enacted pursuant to the authority conferred by § 2 and the first and fourth paragraphs of § 9 of G. L. c. 40A. The express terms of the amendment specifically sanctioned the issuance of a special permit "for any tract of land *in a single residence district* to be developed as a cluster development" (emphasis supplied). The amendment's legislative history indicates that one reason for its insertion in the by-law was to provide the board with an independent basis for evaluation and approval of the Moore Homes project apart from the difficulties that might be encountered under the variance procedure. Although the principle has been expressed in different ways, it is well settled that any provision of a municipal zoning by-law which is challenged as defective must not be viewed in isolation. Rather, the provision must be construed in the context of the by-law as a whole and it must be given a sensible and practical meaning within that context. See *Rando* v. *Board of Appeals of Bedford,* 348 Mass. 296, 297-298 (1965); *Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 258-259 (1970); *Selectmen of Hatfield* v. *Garvey,* 362 Mass. 821, 826 (1973). If at all possible, "superficially discordant provisions" should be harmonized. *Lee* v. *Board of Appeals of Harwich, ante* 148, 154 (1981). To limit the amendment, as the plaintiff would have us do, to authorizing permits only for a project of single-family residences clustered together, would render the amendment large-

ly superfluous and effectively nullify the purposes for which it was enacted. Cf. *Doliner* v. *Town Clerk of Millis*, 343 Mass. 10, 14-15 (1961); *Foxborough* v. *Bay State Harness Racing & Breeding Assn.*, 5 Mass. App. Ct. 613, 618 (1977); *Lee* v. *Board of Appeals of Harwich*, *supra* at 154. We conclude that a fair reading of the entire Belmont zoning by-law, as amended by the "Cluster Development Amendment," indicates that multi-family dwelling units are permitted in a cluster development which meets all the requirements of the by-law and that the failure to make a corresponding change in the by-law's general use provisions, if one was needed at all, was an oversight.

The plaintiff's other contention — that Moore Homes' permit is invalid because the amendment provides inadequate standards to guide the board's decision on an application for a special permit — is without merit. The amendment makes specific provision for each of the several requirements prescribed for cluster developments by G. L. c. 40A, § 9. Moreover, it imposes several additional prerequisites which are more stringent than those mandated by The Zoning Enabling Act, including more severe dimensional regulations, greater restrictions on the number of dwelling units, and greater requirements for open space. On the whole, its standards are much more detailed and comprehensive than the broad delegations of discretion which were examined and approved in cases such as *Building Commr. of Medford* v. *C. & H. Co.*, 319 Mass. 273, 280-281 (1946), *Sellors* v. *Concord*, 329 Mass. 259, 263-264 (1952), and *Butler* v. *East Bridgewater*, 330 Mass. 33, 36-38 (1953). While "[t]he by-law confers a measure of discretionary power to the board . . . it does not confer unrestrained power to grant or withhold special permits by the arbitrary exercise of that discretion." *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 638 (1970), and cases cited. We are satisfied that the amendment contained adequate standards for the guidance of the board in deciding whether to grant a permit. We are satisfied as well that the board considered and applied all of the relevant factors enumerated in the by-law prior to granting the permit, and that its decision rested on legally tenable grounds and was not unreasonable or arbitrary. See *Butler* v. *East Bridgewater*, *supra* at 38-40; *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118, 120 (1955); *Golden* v. *Selectmen of Falmouth*, 358 Mass. 519, 523 (1970); *Caruso* v. *Pastan*, 1 Mass. App. Ct. 28, 29-30 (1973). Because we cannot substitute our judgment for that of the board (*Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277-278 [1969]), we lay to one side the plaintiff's arguments as to the wisdom of the board's decision.

As mentioned earlier in this opinion, the relief granted by the special permit encompassed all the relief granted by the variance. It is fair to say that the permit was designed to, and did, supersede the variance. This circumstance, as was recognized by counsel for the plaintiffs at oral argument on the cases, renders the issues raised by the appeal from the ruling upholding the variance moot.

The judgment appealed from is vacated. A new judgment is to be entered which (a) dismisses the actions with respect to all plaintiffs except Mauro on the ground of standing; (b) upholds the board's decision with respect to the special permit as within its authority; and (c) dismisses the variance case, not on the merits, but because it has become moot.

*So ordered.*

*Gerald H. Abrams* for the plaintiffs.

*John Kenneth Felter* for Moore Homes, Inc.

*Peter J. McCue (Robert J. Morrissey,* Town Counsel, with him) for Board of Appeals of Belmont.