FOSTER MASONRY PRODUCTS, INC. vs. BOARD OF
APPEALS OF ACTON.

Middlesex. April 13, 1982. — May 17, 1982.

Present: HALE, C.J., ROSE, & BROWN, JJ.

*Municipal Corporations*, Earth removal regulation. *Real Property*, Removal of soil. *Words*, "Removal."

A provision of a by-law adopted by the town of Acton under G. L. c. 40, § 21(17), that no person should "remove" any soil, loam, sand or gravel from any land without a permit except in certain circumstances, applied to the plaintiff's proposal to remove sand for stockpiling and eventual use in the manufacture of concrete blocks on a contiguous parcel. [548-549]

In an action by a landowner against a board of appeals involving a by-law adopted under G. L. c. 40, § 21(17), and prohibiting, with certain exceptions, the removal of soil, loam, sand or gravel from premises without a permit issued by the board, substantial evidence warranted the board's denial of the permit and, in the circumstances, such action was neither arbitrary nor unreasonable. [549-550]

CIVIL ACTION commenced in the Superior Court Department on May 9, 1980.

The case was heard by *Abrams*, J.

*Acheson H. Callaghan, Jr.* (*Cathy P. Brooks* with him) for the defendant.

*Julian J. D'Agostine* (*Edwin E. Taipale* with him) for the plaintiff.

HALE, C.J. The town of Acton has an "Earth Removal By-law" which was adopted on March 13, 1950, shortly after the insertion of G. L. c. 40, § 21(17), by St. 1949, c. 98. The town adopted its by-law pursuant to that subsection. That by-law designated the board of appeals under the town's zoning by-law as the permit granting authority. In February of 1980 the plaintiff, desiring to remove 139,000

cubic yards of sand from its property and to strip 11,000 cubic yards of loam, filed two petitions with the board. One sought a determination that a soil removal permit was not required as the plaintiff proposed to use all of the sand removed in the manufacture of concrete blocks at its plant located on a parcel of land owned by the plaintiff and contiguous to the parcel from which the sand and loam would be removed[1] and about one-quarter of a mile from the proposed removal site. Thus, they claim, as no sand would be removed from the plaintiff's premises, the earth removal by-law did not apply to its proposed operation.

The second petition was for an earth removal permit should the board determine that the proposed operation constituted earth removal under the by-law for which a permit would be required.

The board held a hearing on each of these petitions and issued a decision that a permit was required to engage in the proposed operation. The board then issued a separate decision denying the application for a permit. The stated reasons for the denial are set out in the margin.[2]

The plaintiff then brought the present action of which Counts 3 and 4 are in the nature of certiorari. G. L. c. 249,

---

[1] It appears from the petition that upon completion of the removal of the sand the site would be regraded and reseeded. Presumably, the loam would be used in the renovation.

[2] "After consideration of all facts and material presented at this hearing, the Board finds that the massiveness of this proposed removal combined with its geographic location makes it impossible for the Board to grant a permit with conditions, limitations, and safeguards adequate to protect the neighborhood and the public health, safety, convenience, and welfare. The Board believes that there are unanswerable questions involving potentially deleterious effects on water supply recharge and contamination. The impact of noise, dust, and environmentally detrimental factors is judged to adversely affect the general convenience and welfare of the surrounding residential area. These concerns are particularly important in view of the close proximity of this residential area to the proposed earth removal operation. The Board therefore has unanimously voted to deny the petition."

§ 4, as amended by St. 1973, c. 1114, § 289. See *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 758 (1976).[3]

The Superior Court, acting on count 3, annulled the board's determination that the plaintiff's operation required a permit under the earth removal by-law, and a judgment to that effect was entered. Having so ruled, the judge did not reach the question raised by count 4: whether the board erred in denying a permit to the plaintiff.

1. The board was faced with a straightforward question of law on the issue whether the proposed operation of the plaintiff required a permit under the by-law, as amended September 17, 1955, which provides: "The removal of soil, loam, sand, or gravel from any land in the Town not in public use is prohibited unless authorized by permit from the Board of Appeals, organized under the Protective Zoning By-law, except under the following conditions . . . ." None of the conditions is applicable to this case. It was the plaintiff's position before the board, the Superior Court, and now before us, that the removal of soil from a part of its property for the purpose of stockpiling and eventual use as aggregate in the making of concrete blocks is not "removal" within the meaning of the by-law.

The Supreme Judicial Court in *Butler* v. *East Bridgewater*, 330 Mass. 33 (1953), faced with an analogous situation and the same question as to how the word "removal" in the East Bridgewater by-law should be construed, stated, at 38: "A question has arisen whether the words of the by-law 'remove any soil, loam, sand or gravel from any land' are to be construed as referring to the original stripping or digging or to the ultimate conveying away from the premises. Similar words occur in the enabling act. We think the intent was to authorize towns to control the entire process of sever-

---

[3] Counts 2, 5 and 6 were waived. Count 1 is an appeal under G. L. c. 40A, § 17, and is not appropriate as the board in this case was acting as the permit granting authority under the earth removal by-law and not under the zoning by-law. Compare *Massachusetts Bread Co.* v. *Brice*, *post* 1053 (1982). However, this is of no consequence as all of the plaintiff's claims are dealt with by us under counts 3 and 4.

ing the material and conveying it from the premises, and that the defendant town intended to occupy the entire field with its by-law."

We hold that the removal of the loam and the sand from their natural state is a part of the "entire process," that it is governed by the by-law, and that a permit is required. Furthermore, we are not impressed with the argument that because the excavated sand is to be incorporated into cement blocks on the plaintiff's property before being carried off, the sand is not being taken from the property. It seems to us that regardless of whether the sand leaves the property in cement blocks or in bulk, the result is the same as far as the earth removal by-law is concerned.

2. Although the court did not decide whether the denial of the plaintiff's application for the soil removal permit was erroneous, both parties have briefed the question in the event that we should conclude that a permit is required. As we have everything before us which was before the trial judge, and, considering the nature of the case as pleaded, we see no reason why we should not act upon the question ourselves rather than remanding it (*Morse* v. *Selectmen of Ashland*, 7 Mass. App. Ct. 739, 741-743 [1979]). We do so now.

The parties raise a question as to the standard of review which should be applied in this case, whether it should be the "substantial evidence" standard as applied in cases under G. L. c. 30A or "whether there was sufficient evidence to satisfy the 'arbitrary and capricious' standard." *McSweeney* v. *Town Manager of Lexington*, 379 Mass. 794, 800 (1980). There is no need for us to belabor the semantic differences in the standards of review to be applied, as the record before us discloses that there was substantial evidence before the board warranting its findings. It is also evident that the board acted "in a fair, judicial and reasonable manner upon the evidence presented to [it], keeping in mind the objectives of the by-law." *Butler* v. *East Bridgewater*, 330 Mass. at 38. Nor did it act in an "unreasonable, arbitrary, whimsical or capricious manner." *Id.*

In noting that there was substantial evidence to support the board's decision, we recognize that there was no showing in the record before the board which would give rise to or support the statement in the decision that "the Board believes that there are unanswerable questions involving the potentially deleterious effects on water supply recharge and contamination." The safety of the water supply was a proper consideration for the board. But the board made no finding that the proposed operation would endanger the water supply. Rather, it noted that the questions it had were "unanswerable." We doubt that the board would have expected the plaintiff to come forward with answers to its unanswerable questions. The plaintiff could not have been greatly troubled by this statement, as only two questions were asked by it about the water supply, and those were directed to whether any town officials concerned with the water supply attended the hearing. It is evident from the record, however, that the result would have been the same had the potential problem not been in the minds of the board members. Compare *Kelleher* v. *Selectmen of Pembroke*, 1 Mass. App. Ct. 174, 183-184 (1973).

The judgment is reversed, and a new judgment is to enter affirming the action of the board as to the applicability of the earth removal by-law to the plaintiff's proposed operation and affirming the denial of a permit.

*So ordered.*