NICHOLAS DiPAOLO & others *vs.* BRADSTREET LAND DEVELOPMENT CORPORATION & another.[1] December 8, 1986. *Zoning,* Special Permit, Cluster development.

The corporate defendant (defendant), the developer of a proposed subdivision in Danvers, has appealed from a summary judgment of the Superior

---

[1] The planning board of Danvers, which has not appealed or filed a brief in this court.

Court which annulled a decision of the town's planning board (acting as the special permit granting authority under G. L. c. 40A, §§ 1A and 9), by which the board had granted a special permit to the defendant to subdivide, under § XV ("Cluster Development") of the town's zoning by-law, a parcel of some 7.7 acres residentially zoned land which abuts the properties of the plaintiffs. 1. There is no merit to the defendant's contention that § XV of the by-law was promulgated under the second paragraph of § 9 of G. L. c. 40A rather than under § 2 and the first and fourth paragraphs of § 9. It is clear from the numerous provisions of the by-law which track almost directly those of G. L. c. 40A, § 2, or those of the definition of "[c]luster development" found in the fifth paragraph of § 9, from the face of the defendant's application to the board, from the legend on the plan submitted with the application, from the written advice town counsel gave the board concerning the application and the definitions of "cluster development" found in the by-law and in the fifth paragraph of § 9, from the face of the board's decision, from the legend on the revised plan submitted by the defendant, and from the affidavit of the chairman of the planning board which the defendant appears to have submitted in support of its motion for summary judgment (which was denied) that § XV of the by-law was promulgated under § 2 and the first and fourth paragraphs of § 9. See generally *Owens* v. *Board of Appeals of Belmont,* 11 Mass. App. Ct. 994, 995 (1981). There is nothing in the record to support the notion that § XV may have had its genesis in the Home Rule Amendment (§ 6 of art. 89 of the Amendments to the Constitution of the Commonwealth). See *Sturges* v. *Chilmark,* 380 Mass. 246, 253 & n.11 (1980); *County Commrs. of Bristol* v. *Conservation Commn. of Dartmouth,* 380 Mass. 706, 712-715 (1980). Nor is there anything in *Mullin* v. *Planning Bd. of Brewster,* 17 Mass. App. Ct. 139, 144 (1983), which supports the defendant's position on this point. 2. Both counsel, as well as the judge in the Superior Court, have misconstrued so much of the board's decision as relates to the requirements of the fifth paragraph of § 9 of G. L. c. 40A as to the "open land" which must intervene between the outermost boundaries of the outermost building lots in a cluster development and the perimeter of the development. No such open land appeared on the plan submitted by the defendant with its application for a special permit, perhaps because § XV of the by-law nowhere recognizes the existence of the statutory requirement. Town counsel advised the board that c. 40A, § 9, requires that "groups of [building lots] in a cluster development be separated from adjacent property . . . by *intervening open land*" (emphasis in original). That advice seems to have given rise to the following passage in the board's decision: "During the course of the hearing the [defendant] was requested and agreed . . . to create additional open space by separating all of the lots in the subdivision from the adjacent property by a 5 foot open space *easement*" (emphasis supplied). The board then went on to require the planting of conifers in the "open space ease-

ment." [2] The judge interpreted the quoted language as requiring an easement five feet wide which would be superimposed on the fee of each building lot wherever such a lot would border on the perimeter of the development.[3] That interpretation inevitably led him to the conclusion that the board's decision should be annulled because it purported to permit building lots which would abut the perimeter of the development and failed to provide for the "open land" which the fifth paragraph of § 9 requires between the outermost boundaries of the outermost building lots and the perimeter of the development. We do not agree with the judge's interpretation, which would result in nothing more than a needless partial duplication of the various building setback requirements already found in § XV, C, 5, of the by-law. The judge's interpretation fails to recognize that the board did not purport to identify the owner of the dominant tenement. More to the point, the judge's interpretation gave no effect whatsoever to the explicit directive that "all of the lots in the subdivision [be separated] from the adjacent property by a 5 foot open space." We do not think the board intended to use the word "easement" in the conveyancing sense. We see that word as nothing more than an unfortunate misnomer for a "condition[], safeguard[] [or] limitation[] on . . . use" which any special permit granting authority can impose or require under the authority of the first paragraph as § 9 of c. 40A in connection with the issuance of a special permit for any kind of use. On our interpretation, which we think the correct one, the judge had no basis for annulling the board's decision on the ground that it had failed to require intervening open land between the outermost boundaries of the outermost building lots and the perimeter of the development. 3. It seems likely that the judge also annulled the board's decision on the ground that the five-foot strip of intervening open land (however denominated) did not comply with what he regarded as the imperative of § XV, D ("OPEN SPACE"), 6, of the by-law that the strip be seventy-five feet wide. The by-law is somewhat opaque, in the sense that it talks in several places of "parcels" of "open space" (neither of them defined in the portions of the by-law submitted to the Superior Court) instead of utilizing the statutory nomenclature "intervening open land" and "open land." We have already noted that the by-law fails to make any provision for the statutory requirement of intervening open land. Taking that fact into consideration, and reading § XV, D, 6, in context, we conclude that the seventy-five-foot provision

<hr/>

[2] The "easement" language was echoed in the aforementioned affidavit of the chairman of the planning board, in which he spoke of "separating all of the lots in the [s]ubdivision from adjacent property by a five (5) foot [o]pen [s]pace [e]asement."

[3] That interpretation was also reflected in the revised plan submitted by the defendant which is referred to in part 1 hereof. That plan was requested by the board but was not received by it until after its decision was filed with the town clerk. It does not appear that that plan has been or could be approved by the board.

of that section has no application to the intervening open land unless that land constitutes a necessary part of the total area of open land required by § XV, D, 4, of the by-law and by the third sentence of the fifth paragraph of § 9 of c. 40A. That appears to have been the board's interpretation of § XV, D, 6; we think it the correct one.[4] 4. The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion; the further proceedings may include a remand to the board, with the court to retain jurisdiction; costs of appeal are not to be awarded to any party.

*So ordered.*

*Alan L. Grenier* for the Bradstreet Land Development Corporation.
*Peter G. Smick* for the plaintiffs.

---

[4] We note that the board's decision fails to contain any requirement that the intervening open land (in addition to the "open space" parcels delineated on the application plan) be subjected to at least one of the alternative provisions found in § XV, D, 1 through 3, of the by-law, in § 2 of c. 40A, and in the concluding three sentences of the fifth paragraph of § 9 of c. 40A.