SIMEONE STONE CORP. *vs.* ANDREW T. OLIVA & others (and a companion case[1]).

Barnstable.   November 3, 1965. — December 31, 1965.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Board of Appeals: notice; Special permit; Manufacturing plant. *Notice. Equity Pleading and Practice,* Appeal.

On the record, there was no merit in a contention that a decision of the zoning board of appeals of a town, in effect that the building inspector had improperly issued a building permit under an inapplicable section of the town's zoning by-law and that the landowner should have sought a special permit under another section of the by-law, should be annulled in that such ground of the board's decision was not the ground set forth in the appeal to the board from the issuance of the permit or in the notice of hearing issued by the board to the landowner; the notice of hearing in the circumstances adequately informed the landowner of the subject matter to be heard by the board.   [35–36]

Evidence warranted determinations that a proposed manufacturing plant would not be "carried on entirely within structures or enclosed space" as required by a section of the town's zoning by-law allowing as of right a plant so carried on, and that the town's zoning board of appeals had properly decided that such section of the by-law was inapplicable to the proposed plant and that the building inspector had improperly issued a permit for the plant thereunder.   [37]

In a provision of the zoning by-law of a town authorizing the board of appeals to issue special permits for certain manufacturing plants upon making designated findings, a requirement of findings "that the pro-

———

[1] *Simeone Stone Corp. vs. Board of Appeals of Bourne.*   Oliva and Ingersoll were interveners.

Simeone Stone Corp. *v*. Oliva.

posed use [of the plant] . . . will not be likely to be obnoxious . . .
to the neighborhood" and "that the combination of setbacks and screen-
ing . . . will be such as to insure against any detrimental effect upon
. . . adjoining properties" afforded sufficient standards for the guidance
of the board in passing upon applications for such special permits.
[37–38]

Where the trial judge in a suit in equity under G. L. c. 40A, § 21, by way
of appeal from a decision of a zoning board of appeals makes no find-
ing on a material issue, this court, on appeal from the final decree with
a report of the evidence, may supply the omitted finding if it is sup-
ported by the evidence. [38]

No abuse of discretion by the zoning board of appeals of a town appeared
on the record in a denial by the board of special permits for the con-
struction of a sand and gravel processing plant, a concrete batching
plant, and a bituminous concrete plant on the ground that the plants
would be "obnoxious to the citizens of the" town. [38]

Two BILLS IN EQUITY filed in the Superior Court on
April 24, 1964, and June 26, 1964, respectively.

The suits were heard by *Spring, J.*

*Avram G. Hammer (Richard C. Sheppard* with him) for
Andrew T. Oliva.

*John L. Saltonstall, Jr.,* for Hope G. Ingersoll.

*Robert W. Meserve (Dana C. Coggins* with him) for
Simeone Stone Corp.

SPIEGEL, J.   These two suits are brought by the Simeone
Stone Corp. (Simeone) under G. L. c. 40A, § 21.   In the
first suit Simeone seeks annulment of the decision of the
board of appeals of the town of Bourne (board) upholding
the appeals of the defendants Oliva and Ingersoll from the
issuance of building permits by the building inspector of
Bourne (inspector) to Simeone.   The second suit is an ap-
peal from a decision of the board denying Simeone's appli-
cations for special permits.   The cases were consolidated
for trial in the Superior Court.   A decree annulling the
decision of the board and in effect declaring the validity of
the building permits was entered in the first case, from
which decree the defendants Oliva and Ingersoll appeal.
Simeone appeals from a decree dismissing the bill in the
second case.   The two suits are before us on a single rec-
ord and the evidence is reported.   The trial judge made
"Findings, Rulings and Order" in the first case.   He also

Simeone Stone Corp. *v.* Oliva.

made a "Report of Material Facts" in each case. In the first one he adopted the "facts stated" in his "Findings, Rulings and Order."

The judge found that Simeone applied to the inspector for permits to build a sand and gravel processing plant, a concrete batching plant, and a bituminous concrete plant. The inspector issued permits for all three plants. Ingersoll, an abutting landowner, appealed the issuance of the permits. The board notified Simeone of the hearing on this appeal, stating: "It has been alleged . . . that the issuance of said permits is in violation of the zoning by-laws . . . [§] IV B 5 b and . . . [§] X 2 a." Oliva, a resident of the town of Bourne, filed a similar appeal with respect to the permit for the "hot mix" plant only. The board also notified Simeone of the hearing on this appeal, stating: "It has been alleged . . . that the issuance of said permit is in violation of the zoning by-law . . . [§] IV B, 5 b." After a public hearing, the board voted four to one "that the Building Inspector exceeded his authority in granting the permits under Section IV B 3 [which requires operations to be carried on entirely within structures or enclosed space] and they should properly have been brought under Section IV B 5 b."[2]

---

[2] "IV   USE REGULATIONS

"In the following districts no lot or building shall be used, and no building or structure shall be erected, reconstructed or altered which is intended or designed to be used in whole or in part for any except the following purposes:  . . .

"B.   Business District:  . . .

"3.   Retail stores and service outlets, banks, professional offices, automobile garages and salesrooms, manufacturing and other similar establishments, provided that the processing, storage, or manufacture of goods and materials shall be carried on entirely within structures or enclosed space. . . .

"5.   Subject to special permit by the Board of Appeals acting under Section X, paragraph 2c, provided that the Board of Appeals shall find the following:  . . .

"(b) . . . any business, storage, warehousing, or manufacturing operations which the Building Inspector, after careful study, might question, and provided

"1.   that adequate provision will be made for off-street parking, loading, and unloading, and handling of vehicular circulation;

"2.   that the proposed use will be so designed and operated that it will not be likely to be obnoxious, injurious, or hazardous to the neighborhood; and

"3.   that the combination of setbacks and screening by planting or structures will be such as to insure against any detrimental effect upon existing or potential use of adjoining properties."

After the board ruled that applications for permits should have been brought under § IV B 5 (b), Simeone applied to the board for special permits under that section. The board denied Simeone's applications for the following reasons: "1. Detrimental to the Scenic Highway Residential area. 2. It will be detrimental to the further development of the Bournedale business zoned area. 3. It would likely be obnoxious to the citizens of the Town of Bourne."

The evidence at the trial on the appeals from the decisions of the board is herewith summarized. The inspector testified that Simeone indicated that the plants for which it was asking permits would look substantially the same as the ones in the photographs submitted, and that Simeone informed him of its plans to widen the road going on to the property to make it safer for traffic. Benjamin A. Simeone, the treasurer of Simeone, stated that he informed the inspector of his intention to blacktop the road and to use water to keep down the dust. He also said that the present plant in Stoughton is substantially the same as the one proposed for Bourne. Oliva testified that he was employed by a competitor of Simeone, and that in his experience such plants emitted quantities of dust, noise, odor and fumes. Dr. Melvin First, an expert for Simeone, stated that it was unlikely that any such plants would be obnoxious to the citizens of Bourne in terms of dust, fumes, odor or noise.

Salvatore Simeone, the president of Simeone, testified that the operations would be carried on in an enclosed space, and that he had stated at the hearing that the conveyor belts and the apparatus used for screening sand and gravel would be enclosed. However, he admitted that the photographs and plans submitted with the application to the inspector did not indicate such enclosure. Another witness for Simeone testified as to improvements in dust control equipment.

Leonard C. Mandell, an expert for the defendants, testified that the operation of the ready mix cement plant as shown in the photograph attached to the application would

interfere only minimally with activity along the Scenic Highway; that the operation of the sand and gravel plant would have no significant air pollution effect; and that the bituminous mix plant would be obnoxious to the citizens of Bournedale. Photographs of Simeone's bituminous mix plant in Stoughton show fumes rising from a stack.

Henry F. Maiolini, the chief of police of the town of Bourne, testified that the trucks going in and out of the premises in question would create a traffic hazard. Charles L. Cherry, a forester, stated that smoke emitted from a plant such as the Stoughton plant would seriously affect his ability to detect and control forest fires originating southwesterly of the proposed plant. William G. Bryden, a real estate appraiser, testified that the operation of the proposed plant would depress prices on neighboring real estate. Louis Larusso, the owner of several sand and gravel plants, asphalt plants, and concrete plants, stated that he had never seen a totally enclosed sand and gravel plant or bituminous plant, and that a ready mix plant could not be enclosed at the point of introduction of material or the point of loading of material. He also said that the Federal Aviation Agency requested him to close down one of his plants next to an airport because of the dust emission.

The trial judge found "[t]hat the decision of the Board of Appeals was that the Building Inspector was *without authority* in granting the permits under Section IV (B) 3, and not that his decision in granting the permits was erroneous." The judge then ruled that "the issuance of building permits is initially within the jurisdiction of the Building Inspector," and "[t]hat the decision of the [b]oard . . . is clearly erroneous." This ruling ignores the board's decision that the applications "should properly have been brought under Section IV B 5 b." The logical reading of the decision of the board is that § IV B 3 was inapplicable to the proposed plants and § IV B 5 (b) was applicable instead.

Simeone contends that the decision of the board should be annulled "because it was based on a reason not specified

in the notices of appeal filed by the private party respondents or in the notices of hearing served by the Board on the Petitioner.'' The notice of Ingersoll's appeal referred to violation of §§ IV B 5 (b) and X 2 (a).³ The notice of Oliva's appeal referred solely to violation of § IV B 5 (b).

The purpose of notice is to inform a party of the charges which he will be called upon to meet so that he may properly prepare his defence. *Manchester* v. *Selectmen of Nantucket,* 335 Mass. 156, 158–159. The inspector had authority to issue a building permit under § IV B 3 if the operation was to be carried on within structures or enclosed space. He had no authority to issue a special permit under § IV B 5 (b). Such a permit can only be issued by the board. The issuance of either permit is sufficient to authorize construction. The allegation that a permit should not have been issued because it violated § IV B 5 (b) implied that Simeone was required to show that there was no violation of that section. The only reason for such a requirement is that Simeone could not properly obtain a permit under § IV B 3 because the proposed operation was not to be carried on within structures or enclosed space. The notice informed Simeone of a contention that § IV B 5 (b) was the provision of the by-law applicable to its proposal and, by inference, that § IV B 3 was not applicable. We note, too, from our review of the evidence that apparently at the hearing before the board on the appeals of Oliva and Ingersoll a representative testified in regard to the ''enclosing or non-enclosing of the belts'' and that Simeone ''would enclose . . . [its] structures.'' In addition, Simeone ''brought in pictures and plans and so forth, of what they intended to do.'' We are satisfied that the notice was sufficient to inform Simeone of the ''charges that . . . [it] will be called upon to meet.'' *Manchester* v. *Selectmen of Nantucket, supra,* 158–159.

---

³ The relevant portions of § X 2 (a) read, ''The Board of Appeals shall have . . . (a) The power to review and act upon grievances resulting from the Building Inspector's neglect or refusal, for a reason of zoning character, to issue a building permit.'' This section has no relevancy to the issues before us.

The trial judge made no finding from which it could be determined whether the board acted properly in deciding that § IV B 3 was inapplicable. However, since the evidence is reported and the exhibits are before us, this court has power to find the facts. *Bernhardt* v. *Atlantic Fin. Corp.* 311 Mass. 183, 184–185. *Murley* v. *Murley,* 334 Mass. 627, 628. From our review of the testimony and our examination of the plans, photographs, and applications for permits, we find that the proposals submitted to the inspector were not for a use "carried on entirely within structures or enclosed space." Consequently § IV B 3 did not apply, and the inspector had no power to issue the permits.

The trial judge dismissed Simeone's bill in the second case on the grounds that his decision holding the building permits to be valid made the question of special permits moot, and in the alternative, that "the Board did not abuse its discretion by refusing to grant special permits to the petitioner under Section IV B 5 (b) of the zoning by-law of the Town of Bourne and its decision should stand."

In view of our conclusion that the trial judge erred in holding the building permits to be valid the denial of the special permits is not a moot question.

Simeone contends that the terms "obnoxious . . . to the neighborhood" and "detrimental effect upon . . . adjoining properties" in § IV B 5 (b) are insufficient standards to guide the board, and therefore cannot be applied to deny a permit.

"Every presumption is to be made in favor of the by-law, and its enforcement will not be refused unless it is shown beyond reasonable doubt that it conflicts with the Constitution or the enabling statute." *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594. *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114. The purpose of a zoning by-law is to promote "the health, safety, convenience, morals or welfare" of the inhabitants of a municipality. G. L. c. 40A, § 2. See *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228. The provisions of § IV B 5 (b) challenged by Simeone relate directly to

this purpose. We are of opinion that they provide adequate guidance for the issuance of a special permit for such a use and in such an area as is specified by the by-law. *Lexington* v. *Govenar*, 295 Mass. 31, 35–36. *Building Commr. of Medford* v. *C. & H. Co.* 319 Mass. 273, 281–282. *Sellors* v. *Concord*, 329 Mass. 259, 263. *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118. Further, the provisions in question are an essential part of § IV B 5 (b). If they are inadequate the entire provision falls (*Coolidge* v. *Planning Bd. of No. Andover*, 337 Mass. 648, 652) and the board would have no power to issue the special permits which Simeone requests.

Simeone contends that we should reverse the decree of the trial court because the judge did not make independent findings to support his conclusion. ''Where, however, the evidence is reported we may supply the omitted finding if there is evidential support for it.'' *Twomey* v. *Board of Appeals of Worcester*, 347 Mass. 684, 685. *Sullivan* v. *Board, of Appeals of Canton*, 345 Mass. 117, 119. In the instant case there is ample evidence to support such a finding. From our examination of the entire record we find that the proposed plants ''would likely be obnoxious to the citizens of the Town of Bourne.'' Accordingly, we hold that the board did not abuse its discretion in denying special permits to Simeone.

The decree in each case is reversed. In each case a decree is to be entered stating that the decision of the board did not exceed its authority and that no modification of its decision is required.

*So ordered.*