LAURENCE S. FORDHAM *vs.* MICHAEL BUTERA & others.[1] No. 05-P-1779. March 5, 2007. *Zoning,* Validity of by-law or ordinance. Further appellate review granted, 449 Mass. 1103 (2007).

Upon the plaintiff Laurence S. Fordham's appeal of a 2003 decision of the zoning board of appeals of Weston (board) granting a storage permit to the defendants Michael and Janet Butera (Buteras) pursuant to § V.B.5 of the

---

[1]Janet Butera and zoning board of appeals of Weston (board). The board did not participate in the appeal.

Weston zoning by-law (2003) (by-law), a Land Court judge, on cross motions for summary judgment, ruled that § V.B.5 was invalid and therefore annulled the decision of the board.[2] The challenged permit allowed the Buteras to store a substantial amount of commercial landscaping equipment, materials, and supplies at their home, adjacent to the home of Fordham, both properties being in a residentially zoned district. We affirm.

*Background.* The parties own abutting properties on South Avenue in Weston. The Weston by-law, pursuant to § V.A.2, prohibits use variances. The Buteras have a landscaping (including snow plowing) business which, the board found, largely, but not exclusively, serves residents of Weston. In connection with their business they use, among other things, trucks, snow plows, and mechanical landscaping equipment. On October 6, 1995, the board, pursuant to § V.B.5 of the by-law, granted the Buteras' petition for a permit (1995 permit) "to store [a] landscap[ing] trailer, 1 truck and tools in barn,[3] to be kept indoor[s] at all time[s]."

Section V.B.5 of the by-law provides, in relevant part, as follows:

"Uses Allowed By Permit

Storage for Commercial and Business Activities: In Single Family Residence Districts the Permit Granting Authority may issue Permits for the storage of vehicles, materials, supplies and equipment in connection with commercial or business activities principally carried on in the Town and providing services essential to the uses of premises permitted in the residence districts . . . ."

In May, 2003, Fordham sought enforcement of the terms of the 1995 permit from the Weston building inspector (inspector), claiming that the Buteras were in violation of the permit. On June 2, 2003, the inspector directed the Buteras to remove "rock, wood chips, bark mulch and cut wood" from their property (locus) because the storage of those materials was not "technically allowed" under the 1995 permit. The Buteras then filed an appeal with the board from the inspector's order and simultaneously requested an amendment to their 1995 permit. Following a hearing in July, 2003, the board issued a decision, by unanimous vote, amending the 1995 permit to allow the Buteras:

"to store on [locus] the following vehicles, materials, supplies and equipment in order to conduct their landscaping (including snowplowing) business: two four-cylinder trucks . . . ; two pick-up trucks (one primarily for the Buteras' personal use); one car (primarily for personal use); two trailers for use in their landscaping business; two snow plows; snow tires; one small Bobcat; landscaping products such as fertilizer, lime, grub control and other similar lawn treatment products; peat

---

[2]The effect of the judge's decision was to limit the Buteras' use of their property (locus) to the terms of a storage permit issued to them by the board in 1995 (1995 permit).

[3]Prior to the 1995 permit, on December 2, 1991, the board granted a variance permitting the Buteras to construct the barn on the locus. At the hearing on the variance application, the Buteras stated that "the barn was for personal use for the storage of two to three cars, a boat trailer, and lawn mowing equipment" and that the barn "would have no business use." Apparently, there was no appeal taken from the 1991 variance, or from the 1995 storage permit.

moss, bark mulch, loam, stones (primarily for personal use), firewood (primarily for personal use); lawnmowers, grass catchers (for the lawnmowers), leaf blowers, leaf vacuums; grass trimmers, hedge trimmers, a sharpening wheel; and rakes, shovels, picks, grub hoes and pitch forks."[4]

Fordham appealed the permit amendment to the Land Court pursuant to G. L. c. 40A, § 17, and challenged the validity of § V.B.5 of the by-law pursuant to G. L. c. 185, § 1(j ½).[5] The parties filed cross motions for summary judgment and, at hearing, agreed to limit argument to the validity of § V.B.5 of the by-law. The judge ruled § V.B.5 of the by-law invalid because the by-law lacks sufficient standards and thus accords "unbridled discretion" to the board in deciding whether to grant a permit under that section. The judge reasoned that whether § V.B.5 of the by-law is categorized as a special permit, implicitly within the guidelines and constraints of G. L. c. 40A, § 9, or is otherwise construed as an exercise of independent municipal power pursuant to art. 89 of the Amendments to the Massachusetts Constitution, the Home Rule Amendment, a fundamental principle applies, namely, a permit granting authority or special permit granting authority cannot act without controlling standards, and, further, such standards are lacking in § V.B.5 of the by-law. The judge thus annulled the board's 2003 decision as being in excess of its authority.

The Buteras note that the by-law benefits from a presumption of validity, and argue that the by-law provides ample standards for the § V.B.5 permit. Fordham argues that the judge correctly annulled the permit because § V.B.5 of the by-law lacks required standards.[6] We agree with the judge that § V.B.5 of the by-law does not have sufficient standards to guide and govern the exercise of authority by the board, and affirm the judgment for the reason stated by the judge and for additional reasons.

*Discussion.* Authority of a board of appeals "to act on applications for special permits for exceptions to the zoning by-law cannot leave the decision subject to the 'untrammeled discretion' or 'unbridled fiat' of the board." *Mac-Gibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 637-638 (1970), quoting from *Building Commr. of Medford* v. *C. & H. Co.*, 319 Mass. 273, 281 (1946). We consider this fundamental rule of fairness equally applicable to a by-law provision such as § V.B.5, even if, as the Buteras urge, the other requirements for a § V.B.5 permit are less stringent than those for a special permit under the by-law.[7] See, e.g., *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 363-364 (1973) (overly vague provisions

---

[4]The board members unanimously agreed with the building inspector's determination that the Buteras were in violation of their 1995 permit, at least with respect to some of the materials cited. However, the board took no action on the Buteras' appeal of the building inspector's order, considering that order mooted by the board's decision amending the 1995 permit.

[5]General Laws c. 185, § 1(j ½), grants the Land Court exclusive original jurisdiction of complaints under G. L. c. 240, § 14A, "to determine the validity and extent of municipal zoning ordinances, by-laws and regulations."

[6]Given the result we reach, we need not address the Buteras' and Fordham's other arguments.

[7]If, in the alternative, we were to construe § V.B.5 of the by-law as a special permit under G. L. c. 40A, § 9, the by-law would fail under the statutory requirement

delegating authority to administrative agency allow "arbitrary and capricious decisions in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States and of art. 10 of the Massachusetts Declaration of Rights"). "The standards need not be of such a detailed nature that they eliminate entirely the element of discretion from the board's decision," *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 231 (1972), cert. denied, 409 U.S. 1108 (1973), quoting from *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. at 637-638, and "[t]he degree of certainty with which standards for the exercise of discretion are set up must necessarily depend on the subject matter and the circumstances." *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118 (1955) (*Burnham*).

There is no merit to the Buteras' arguments that § I.B of the by-law, entitled "Prohibited Uses" (reproduced in the margin),[8] provides sufficient standards for the board's exercise of authority in this case. The Buteras' cited authority is not persuasive. See, e.g., *Burnham, supra*, in which the permitted use (motel) was explicitly defined, and thus was more specific than the "storage" in question here. See also note 7, *supra*. Moreover, the language the Buteras cite in *Burnham, supra* at 115, is incomplete (permit granting authority directed to consider "the effects upon the neighborhood and the City at large"). In addition, the permit granting authority in *Burnham* was also required, by the terms of the by-law, to receive "evidence of compliance by the applicant with the requirements of the departments of public health and public safety, and other agencies concerned." *Ibid.* Similarly, the Buteras' parenthetical excerpt from *Simeone Stone Corp.* v. *Oliva*, 350 Mass. 31, 37 (1965) ("obnoxious . . . to the neighborhood" and "detrimental effect upon . . . adjoining properties"), is also incomplete, and the references to *Shuman* v. *Board of Aldermen of Newton*, 361 Mass. 758, 766 (1972), and *Owens* v. *Board of Appeals of Belmont*, 11 Mass. App. Ct. 994, 996 (1981), do not support their argument.

For all of the above-stated reasons, we agree with the judge that § V.B.5 of the by-law, whether considered a zoning provision, or a general by-law provision, lacks sufficient standards to fairly guide the board's exercise of authority.

*Judgment affirmed.*

*Richard J. Fallon* (*Jonathan A. White* with him) for Michael Butera & another.

*Laurence S. Fordham*, pro se.

---

emphasized by the court in *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 110 (1984): "Section 9 is unambiguous . . . authorizing special permits only for 'specific types of uses.' " As "storage" is not defined in the by-law, the Weston language is, we conclude, far too general to comply with this requirement.

[8]Section I.B of the by-law provides:

> "Notwithstanding any other provision of this Zoning By-Law, any building or structure or any use of any building, structure or premises which is injurious, obnoxious, offensive, dangerous, or a nuisance to the community or to the neighborhood through noise, vibration, concussion, odors, fumes, smoke, gases, dust, harmful fluids or substances, danger of fire or explosion, or other objectionable feature detrimental to the community or neighborhood health, safety, convenience, morals or welfare, is prohibited."