Laurence S. Fordham vs. Michael Butera & another.[1]

Suffolk. September 6, 2007. - November 8, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Zoning,* By-law, Validity of by-law or ordinance, Special permit, Board of appeals: decision.

A town's zoning bylaw, taken as a whole, was not invalid, where it provided adequate standards to guide the town zoning board of appeals in making a decision to grant or withhold a permit [44-46] and had the requisite specificity for purposes of G. L. c. 40A, § 9 [46-47].

This court declined to address certain issues raised in a party's summary judgment motion before the Land Court where the parties agreed not to proceed on those issues and where those issues were not fully briefed on appeal. [47]

Civil action commenced in the Land Court Department on August 1, 2003.

The case was heard by *Leon J. Lombardi,* J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Laurence S. Fordham,* pro se.

*Richard J. Fallon* for the defendants.

Spina, J. Michael and Janet Butera appealed from a judgment in the Land Court that annulled a decision of the zoning board of appeals of Weston (board) amending their permit to store in a barn at their residence certain vehicles, materials, supplies, and equipment used in connection with their landscaping and snow removal business. A judge in the Land Court concluded that the board exceeded its authority in granting the amendment, where it relied on a section of the town's zoning bylaw that he determined is invalid because it purports to grant unbridled discretion to the board. The Appeals Court affirmed the judgment, see *Fordham* v.

[1] Janet Butera. The town of Weston and its zoning board of appeals took no part in this appeal.

*Butera,* 68 Mass. App. Ct. 907 (2007), and we granted further appellate review. We now hold that the zoning bylaw, taken as a whole, is not invalid where it provides adequate standards to guide the board in making a decision to grant or withhold a permit. We vacate the judgment and remand the case for further proceedings consistent with this opinion.

1. *Background.* The parties before us — Laurence Fordham and the Buteras — own abutting properties in a single-family residence district in Weston, and the Buteras own a landscaping and snow removal business. In 1995, the Buteras petitioned the board for a permit "to store [a] landscap[ing] trailer, 1 truck and tools in barn, to be kept indoor[s] at all time[s]." The board granted the permit (1995 permit) pursuant to § V.B.5 of the Weston zoning bylaw. The validity of that permit is not disputed. Section V.B.5 of the bylaw provides, in relevant part:

> "Storage for Commercial and Business Activities: In Single Family Residence Districts the Permit Granting Authority may issue Permits for the storage of vehicles, materials, supplies and equipment in connection with commercial or business activities principally carried on in the Town and providing services essential to the uses of premises permitted in the residence districts . . . ."

In May, 2003, Fordham claimed that the Buteras were violating the 1995 permit and sought enforcement of that permit from the Weston building inspector. The inspector responded and directed the Buteras to remove rocks, wood chips, bark mulch, and cut wood from their property because storage of those materials on their property was not permitted under the 1995 permit. The Buteras appealed from the inspector's order, and also requested an amendment to the 1995 permit to allow them to store additional items used in connection with their business. Following a hearing in July, 2003, the board voted to amend the permit (2003 decision) and allow the Buteras to store on their property certain additional vehicles, materials, supplies, and equipment used in connection with their business.[2]

---

[2]More specifically, the 2003 decision permits the storage of "two four-cylinder trucks with box in the back (for carrying leaves, grass, branches and

Fordham appealed the 2003 decision to the Land Court and, in his appeal, challenged the validity of § V.B.5 of the bylaw.[3,4] Fordham filed a motion for summary judgment, and, at hearing, the parties agreed to limit argument to the validity of § V.B.5. The judge concluded that § V.B.5 impermissibly granted the board "unbridled discretion" in deciding whether to grant a permit and that the section is therefore invalid. The judge thus annulled the 2003 decision made by the board pursuant to § V.B.5.

2. *Discussion.* Fordham contends that § V.B.5 of the bylaw is invalid because it lacks standards and therefore grants the board untrammeled discretion in its decisions to grant or withhold storage permits. The Buteras, on the other hand, argue that, when read as a whole, the bylaw contains standards that prevent § V.B.5 from being applied with untrammeled discretion.

When a town's legislative body grants authority through its bylaws to a zoning board of appeals to act on applications for special permits, those bylaws must provide the board both with sufficient standards and with sufficient specificity as to the terms used in the bylaw. See *Gage* v. *Egremont*, 409 Mass. 345, 349 (1991) (specificity); *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 118 (1955) (standards).

a. *Sufficiency of standards.* "The delegation of authority to the board of appeals to act on applications for special permits for exceptions to the zoning by-law cannot leave the decision subject to the 'untrammeled discretion' or 'unbridled fiat' of the board." *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 637-638 (1970), quoting *Building Comm'r of Medford* v.

---

bark mulch); two pick-up trucks (one primarily for the Buteras' personal use); one car (primarily for personal use); two trailers for use in their landscaping business; two snow plows; snow tires; one small Bobcat; landscaping products such as fertilizer, lime, grub control and other similar lawn treatment products; peat moss, bark mulch, loam, stones (primarily for personal use), firewood (primarily for personal use); lawnmowers, grass catchers (for the lawnmowers), leaf blowers, leaf vacuums; grass trimmers, hedge trimmers, a sharpening wheel; and rakes, shovels, picks, grub hoes and pitch forks."

[3]General Laws c. 185, § 1 (j¹/₂), confers exclusive original jurisdiction on the Land Court to determine, under G. L. c. 240, § 14A, the validity and extent of municipal zoning bylaws.

[4]The Attorney General, after notice pursuant to Mass. R. Civ. P. 24 (d), 365 Mass. 769 (1974), has not sought to intervene in this case.

*C. & H. Co.*, 319 Mass. 273, 281 (1946), and *Commonwealth* v. *Protami*, 354 Mass. 210, 211 (1968). See *Berliner* v. *Feldman*, 363 Mass. 767, 771 (1973). Instead, "[t]he Zoning Enabling Act and the by-law together must provide adequate standards for the guidance of the board in deciding whether to grant or to withhold special permits . . . . The standards need not be of such a detailed nature that they eliminate entirely the element of discretion from the board's decision." *MacGibbon* v. *Board of Appeals of Duxbury*, *supra* at 638. "The degree of certainty with which standards for the exercise of discretion are set up must necessarily depend on the subject matter and the circumstances." *Burnham* v. *Board of Appeals of Gloucester*, *supra*. When a court considers the adequacy of the standards in a bylaw, "[e]very presumption is to be made in favor of the by-law, and its enforcement will not be refused unless it is shown beyond reasonable doubt that it conflicts with the Constitution or the enabling statute." *Simeone Stone Corp.* v. *Oliva*, 350 Mass. 31, 37 (1965), quoting *Caires* v. *Building Comm'r of Hingham*, 323 Mass. 589, 594 (1949).

Section V.B.5 requires that the storage be "in connection with commercial or business activities principally carried on in the Town and providing services essential to the uses of premises permitted in the residence districts." It thus sets limitations as to both the geography and the kind of business for which a person might receive a storage permit. Section I.B of the bylaw further limits the board's permit-granting authority by prohibiting "any building or structure or any use of any building, structure or premises which is injurious, obnoxious, offensive, dangerous, or a nuisance to the community or to the neighborhood through noise, vibration, concussion, odors, fumes, smoke, gases, dust, harmful fluids or substances, danger of fire or explosion, or other objectionable feature detrimental to the community or neighborhood health, safety, convenience, morals or welfare." The requirements of both §§ V.B.5 and I.B must be addressed when considering an application for a permit under § V.B.5. See *Selectmen of Hatfield* v. *Garvey*, 362 Mass. 821, 826 (1973); *Owens* v. *Board of Appeals of Belmont*, 11 Mass. App. Ct. 994, 996 (1981) (provision in bylaw "which is challenged as defective must not be viewed in isolation [but] must be construed in

the context of the by-law as a whole"). Therefore, while the board clearly has discretion to grant or withhold § V.B.5 storage permits, that discretion is not untrammeled. *MacGibbon* v. *Board of Appeals of Duxbury, supra* at 637-638.

This court has upheld bylaws with standards even more permissive than the standards at issue in this case. See, e.g., *Simeone Stone Corp.* v. *Oliva, supra* at 33 n.2, 37 ("obnoxious, injurious, or hazardous to the neighborhood" and "detrimental effect upon existing or potential use of adjoining properties" provided sufficient standards); *Burnham* v. *Board of Appeals of Gloucester, supra* at 118 ("The only standard, other than building and land requirements, was that 'No permit shall be granted . . . without considering the effects upon the neighborhood and the City at large' "). See also *MacGibbon* v. *Board of Appeals of Duxbury, supra* at 638. We conclude that § V.B.5 is not invalid for lack of adequate standards.

The judge also concluded that § V.B.5 confers boundless discretion because it provides that the board "may" issue a permit when the standards above are met. Although the word "may" implies discretion, it does not follow necessarily that boundless discretion exists. In the bylaw at issue here, the fact that the standards in §§ I.B and V.B.5 must be met in order for the board to issue a permit demonstrates the bounded and limited nature of that discretion.

b. *Specificity.* The Appeals Court alternatively held that § V.B.5 is invalid for lack of specificity. In particular, having assumed that § V.B.5 authorizes the issuance of special permits pursuant to G. L. c. 40A, § 9, the court held that the term "storage" in § V.B.5 was not a sufficiently specific type of use to satisfy the specificity requirements of G. L. c. 40A, § 9, and that § V.B.5 therefore was invalid. *Fordham* v. *Butera,* 68 Mass. App. Ct. 907, 909-910 n.7 (2007). We disagree.

General Laws c. 40A, § 9, requires that special permit bylaws provide for "specific types of uses" that are permitted only on issuance of a special permit. In *SCIT, Inc.* v. *Planning Bd. of Braintree,* 19 Mass. App. Ct. 101, 110-111 (1984), the court invalidated a portion of the town's bylaw purporting to make *all* uses in a district subject to the grant of a special permit. Similarly, in *Gage* v. *Egremont, supra* at 349, this court in-

validated a portion of the town's bylaw purporting to make *any* use determined by the planning board subject to the grant of a special permit if the use was not offensive or detrimental to the neighborhood. In contrast, § V.B.5 does not make *any* or *all* uses subject to the grant of a special permit. Instead, it limits the board's permit-granting authority to one specific use, namely, "the storage of vehicles, materials, supplies and equipment in connection with [certain] commercial or business activities." Section V.B.5 thus sets forth a sufficiently specific use to satisfy the specificity requirements of G. L. c. 40A, § 9.

Moreover, the bylaw need not include a definition of the word "storage" — a common word with a well-understood ordinary meaning[5] — for that word to be sufficiently specific for the purposes of G. L. c. 40A, § 9. Cf. *Berliner* v. *Feldman*, 363 Mass. 767, 771 (1973), quoting *Commonwealth* v. *S.S. Kresge Co.*, 267 Mass. 145, 148 (1929) (bylaw regulating nonconforming uses not lacking requisite certainty where word " 'rebuild,' meaning to build again, is an 'everyday term' whose meaning can be determined 'according to the common and approved usages of the language' "); *Shuman* v. *Aldermen of Newton*, 361 Mass. 758, 766 (1972) ("no fatal vagueness or uncertainty" in zoning ordinance where proposed use fell within "common and approved" meaning of words).

3. *Miscellaneous.* Fordham asks us to decide other issues raised in his motion for summary judgment. Neither the Land Court nor the Appeals Court addressed these issues, and we do not reach them here. *Middleborough* v. *Middleborough Gas & Elec. Dep't*, 422 Mass. 583, 588 (1996). Where those issues have not been waived, the motion for summary judgment is remanded for determination of the remaining issues raised therein.

The judgment is vacated and the case is remanded to the Land Court for further proceedings consistent with this opinion.

*So ordered.*

---

[5]The word "storage" means "a space for storing," or "the act of storing." Webster's Third New Int'l Dictionary 2252 (1993).