Agnes, Peter W., J.
*301 1. Introduction
This case is before the Court on cross motions for summary judgment and the plaintiffs’ motion for a preliminary injunction. For the reasons discussed below, the Plaintiffs’ Motion for a Preliminary Injunction is DENIED, the Plaintiffs Motion for Summary Judgment is DENIED as to all counts and the Defendants’ Motion For Summary Judgment is ALLOWED as to Counts I, II and III and DENIED as to Count IV.
2. Statement of Facts
The undisputed facts are as follows. Throughout 2004 and 2005, Town of Milford Board of Health inspectors noted a growing problem with the overcrowding of rental units in Milford. This overcrowding resulted in dangerous and unhealthy conditions. In response to this issue, the Milford Boards of Selectmen and Health proposed to the Milford Town Meeting a new Article 37, entitled “Occupancy of Buildings.” Article 37 passed and was approved by the Attorney General in 2007.
3.
Article 37 implements a procedure requiring that properties that are leased, rented or offered for lease or rent must first be registered with the Milford Board of Health and obtain a Certifícate of Registration. Said certificate is issued after the Board of Health, or its agents, measure the interior of the unit and determine the allowable occupancy based on the State Sanitary Code and provisions of the Milford Board of Health Rules and Regulations. The bylaw charges a $50 fee for the initial certificate and an annual renewal fee of $15. The bylaw also includes a penalty provision that would authorize a fine of up to $300 per day for each day of violation.
4.
In order to effectuate Article 37, The Board of Health solicited proposals for a contractor who could contact unit owners and/or occupants, measure units, determine occupancy limits and prepare the data. The contract was awarded to defendant RMX Northeast, Inc. (“RMX”). RMX was paid $45 per unit. Prior to any inspections, the Milford Board of Health sent letters to owners of rental units. None of the letters in the summary judgment record clearly explained what rights owners had if they wanted to refuse RMXs inspection or that the town would have to obtain a warrant in the event of a refusal. The letters did mention that failure to cooperate could result in legal action and penalties of up to $300 per day. RMX ultimately successfully completed its work for 3,678 out of 4,064 applicable units. There are 369 units whose owners have either refused or failed to seek certification. All of the units entered into by RMX were at the consent of owners or occupants. The Milford Board of Health has not sought entry into any units without permission.
5.
In response to the passing and implementation of Article 37, the plaintiffs requested a preliminary injunction alleging that the Article violates their equal protection rights, that the fees under the article constitute a tax, that the Article violates their Fourth Amendment rights and that their due process rights were violated. Subsequent to this motion, both the plaintiffs and the defendants filed for summary judgment regarding these same claims.
6. Standard of Review
To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction." Tri-Nel Mgt., Inc. v. Bd. of Health of Barnstable, 433 Mass. 217, 219 (2001). Additionally, when a parly seeks to enjoin governmental action, “the court also considers whether the relief sought will adversely affect the public.” Id., citing Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
7. Legal Analysis. Motion for a Preliminary Injunction
The plaintiffs originally brought a motion for a preliminary injunction seeking to prohibit the defendants from enforcing any of the provisions of Article 37 on January 8, 2008. In support of their motion, the plaintiffs asserted the same arguments that are the basis of their complaint and their motion for summary judgment, namely that Article 37 violates their Fourth and Fourteenth amendment rights, equal protection, and constitutes an improper tax.
8.
Applying the preliminary injunction standard to the current case finds that the plaintiffs have failed to meet their burden. For the reasons set forth below addressing the same constitutional arguments made in support of their motion for summary judgment, the plaintiffs fail to demonstrate they have a fair likelihood of success on the merits. Perhaps more significantly, although the plaintiffs originally asserted they would suffer irreparable harm without a preliminary injunction, it has been over six months since their motion was filed and the Milford Board of Health has not sought entry to any units in Milford without express permission nor have they sought other enforcement actions against landlords or tenants. Whatever “irreparable harm” that the plaintiffs initially contemplated has clearly not come to pass. Without a finding of harm, the plaintiffs similarly fail the third step of the preliminary injunction analysis as no harm to the plaintiff cannot outweigh the potential harm to the health of the town. Similarly, awarding the preliminary injunction to enjoin this governmental action could *302 adversely affect the public by restricting the Board of Health in their efforts to maintain the well-being of the communiiy.
9.
The muted risk of irreparable harm, the plaintiffs’ inability to demonstrate their likelihood of success on the merits, and the potential harm to the overall health of the town indicates that granting a preliminary injunction in these circumstances would be improper, thus the plaintiffs’ motion is DENIED.
10. Standard of Review
Summary judgment may be granted when “viewing the evidence in the light most favorable to the nonmov-ing party, all material facts have been established and the moving party is entitled to judgment as a matter of law.” Cabot Corp. v. AMX Corp., 448 Mass. 629, 637 (2007), citing Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). If the affidavits, pleadings and other discovery demonstrate the lack of a “genuine issue as to any material fact” then summary judgment is proper. Dupont v. Comm’r of Corr., 448 Mass. 389, 397 (2007), quoting Mass.R.Civ.P. 56(c). In seeking summary judgment, the moving party may prevail by demonstrating that the nonmoving party has no reasonable expectation of proving an essential element of their case at trial. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). Once the absence of a triable issue is established the nonmoving party must show “specific facts that demonstrate that there is a genuine issue for trial.” Cole v. New England Mut. Life Ins. Co., 49 Mass.App.Ct. 296, 297 (2000). The non-moving party may not rely on “bare assertions and conclusions” to create a dispute necessary to defeat summary judgment. Benson v. Mass. Gen. Hosp., 49 Mass.App.Ct. 530, 532 (2000), quoting Polaroid Corp. v. Rollins Envtl. Servs. (NJ), Inc., 416 Mass. 684, 696 (1993).
11.
In considering the adequacy of a bylaw “(e]very presumption is to be made in favor of the by-law, and its enforcement will not be refused unless it is shown beyond reasonable doubt that it conflicts with the Constitution or the enabling statute.” Fordham v. Butera, 450 Mass. 42, 45 (2007), quoting Simeone Stone Corp. v. Oliva, 350 Mass. 31, 37, (1965). Even more deference is given to a bylaw approved by the Attorney General pursuant to G.L.c. 40, §32. Town of Canton v. Bruno, 361 Mass. 598, 609 (1972) (bylaws so approved have a prima facie validity).
12. Cross Motions for Summary Judgment
The plaintiffs’ first argument asserts that Article 37 violates their equal protection rights by subjecting them to fees and requirements while not holding similarly situated owner-occupied units and buildings to the same standard. The defendants assert that the plaintiffs misunderstand Article 37, in that it actually applies to all units that are rented out except for those specific units that are owner-occupied; thus even in a three-unit building where one unit is owner-occupied, the other two units would be subject to the Article 37 requirements. The defendants further argue that Article 37 is rationally related to the Town’s interest in remedying an overcrowding problem affecting rental units.
13.
Under the Equal Protection clause, similarly situated entities must be similarly treated by the government. In the Matter of Corliss, 424 Mass. 1005, 1006 (1997). Importantly, equal protection does not prohibit differences in treatment where there is a basis for the difference that is reasonably related to the goals of the regulation. Maher v. Brookline, 339 Mass. 209, 213 (1959). Legislation that neither burdens a fundamental right nor discriminates against a suspect classification is subject to the rational basis level of judicial analysis. Cote-Whiteacre v. Dept. of Public Health, 446 Mass. 350, 366 (2006). In examining an equal protection claim through the rational basis lens, the analysis asks whether “an impartial lawmaker could logically believe that the classification would serve a legitimate public purpose that transcends the harm to the members of the disadvantaged class.” English v. New Enland Med. Ctr., Inc., 405 Mass. 423, 429 (1989). When the statute or regulation limits one’s use of land, it is not invalid as long as the regulation serves a rational, public purpose. Hamel v. Bd. of Health of Edgartown, 40 Mass.App.Ct. 420 (1996).
14.
In the current case, Paul A. Mazzuchelli (“Mazzuchelli”), the director of the Milford Board of Health, became aware of a problem with the overcrowding of rental apartments and to combat the dangerous and unhealthy conditions that were created, he developed and helped pass Article 37. Article 37 applies to all rental units except for those specific rental units that are owner occupied based on the Board of Public Health’s observations of conditions in rental properties. The plaintiffs misunderstand this distinction and premise their equal protection argument on an assumption that Article 37 would somehow not apply to rental units in owner occupied buildings. Where this is not the case, the plaintiffs’ argument founders. Further, as Article 37 limits an owner’s use of land without discriminating or burdening fundamental rights it is valid as long as it serves a rational, public purpose. Hamel, 40 Mass.App.Ct. 420. The passing of a bylaw affecting only rental units in response to observations by board of public health employees of dangerous and unhealthy conditions in rental units is rationally related to the legitimate government interest of protecting public health. There is simply no basis for arguing that owner-occupied units should also be held to the requirements of Article 37 where the observations of dangerous and un *303 healthy conditions were all contained in rental units. Maher, 339 Mass. at 213.
15.
Given the plaintiffs misunderstanding of the application of Article 37, combined with the fact that the bylaw is rationally related to the legitimate governmental interest of public safety the plaintiffs’ Motion for Summary Judgment as to Count I of their complaint is DENIED and the defendants’ Motion for Summary Judgment as to Count I is ALLOWED.
16.
The plaintiffs next assert that the fees imposed by Article 37 constitute an illegal tax in violation of the Massachusetts Constitution and the Massachusetts Declaration of Rights because the fees are assessed only upon rental owners while not being assessed upon owner occupants. In contrast, the defendants assert that these alleged “taxes” are proper regulatory fees.
17.
The preeminent case discussing the standard of determining whether a charge is a fee or a tax is Emerson Coll. v. City of Boston. 391 Mass. 415 (1984). Emerson sets forth a three-factor analysis that sets fees apart from taxes. The first factor examines whether the fee is “charged in exchange for a particular governmental service which benefits the party paying the fee in a manner not shared by other members of society.” Id., quoting National Cable Television Ass’n v. United States, 415 U.S. 336, 341 (1974). The second factor asks whether the party paying the fee has the option of not using the governmental service and avoiding the charge. Emerson Coll., 391 Mass. at 424-25. The final factor examines whether the charges collected are used to compensate the government for the costs of providing the service. Id. at 425.
18.
Examining the first factor of whether there is a “benefit” attached to these fees finds that paying the fee does confer a benefit. Owners of rental properties who pay the fee receive official licensing by the town to rent out property to a specified number of tenants. They further incidentally benefit, as the defendants point out, by a leveling of the playing field amongst landlords. It is true that the Town also benefits as Article 37 will reduce overcrowding; however, the main benefit goes to owners, who after paying are allowed to rent their properties.
19.
Article 37 passes the second factor of the Emerson analysis as property owners could choose to no longer rent out their property and thus avoid the associated licensing fees. Nothing within Article 37 compels owners to pay the fees. Such a case is no different than the fees imposed on those who receive different types of licenses throughout the state.
20.
Article 37 also passes the third Emerson factor. While the bylaw charges $50 for an initial inspection, RMX is paid $45 per inspection. As there are 4,064 units in Milford subject to Article 37 that would leave an excess of $20,320; however, Milford hired Lori Braza-Pallaría for implementation and oversight of the bylaw and her annual salary is $19,996. Additionally, in the first year of existence, the Board of Health has spent $3,775.60 on postage and incidental costs implementing Article 37. Even without considering the indirect costs associated with the implementation of Article 37, the fees within the bylaw do not fully compensate its costs and thus it passes the third Emerson factor.
21.
For the reasons discussed above, the plaintiffs’ Motion for Summary judgment on Count II is DENIED and the defendants Motion for Summary Judgment on Count II is ALLOWED.
22.
In Count III of their complaint, the plaintiffs argue that Article 37 is unconstitutional because it violates their rights pursuant to the Fourth Amendment to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights which essentially prohibit the Town or RMX from entering the plaintiffs’ (or their tenants’) property without a search warrant where no consent has been granted. They further allege that because of the potential fines and penalties contained in Article 37, they are compelled to allow the town into their properties also in violation of the Fourth Amendment and Article 14. In opposition, the defendants assert that Article 37 does not authorize warrantless searches, create any compulsion, nor is the bylaw required to contain any warrant procedures. Additionally, the defendants argue that this claim is not ripe for adjudication as no enforcement actions have even been brought against landlords.
23.
The Massachusetts State Sanitary Code empowers local Boards of Health to “to develop and adopt plans for the systematic, periodic area inspection of dwellings, dwelling units, rooming houses, and rooming units.” 105 C.M.R 400.100(B). If a Board of Health is obstructed from conducting such inspections they have the ability to seek an administrative search warrant in order to gain access to the property. 105 C.M.R 400.100(C)(1). When examining a local bylaw, it is important to also examine the bylaw’s enabling legislation. Fordham, 450 Mass. at 45.
24.
Although the plaintiffs argue that Article 37 is unconstitutional for failing to include the provisions for attaining a search warrant, they cite no Massachusetts cases requiring that a bylaw enacted by a town’s Board of Health must include such provisions. Additionally, in this case the plaintiffs make no reference to the fact that the authorizing regulations that em *304 powered Milford to enact the bylaw also clearly establishes the relevant administrative search warrant procedure. It would be unnecessarily duplicative for this Court to require that local bylaws repeat warrant provisions that are already included in the State Sanitary Code, particularly where Article 37 itself references the Code. Reading the enabling regulations in conjunction with Article 37 finds no violation of the plaintiffs’ Fourth Amendment rights. Given the ability for non-consenting unit owners to force the Board of Public Health to acquire administrative search warrants, it cannot be said that such owners are coerced into consenting to searches.[3]
25.
For the reasons discussed above, the plaintiffs’ Motion for Summary Judgment on Count III is DENIED and the defendants’ Motion for Summary Judgment on Count III is ALLOWED.
26.
The plaintiffs’ final allegation asserts that Article 37 violates their Fourteenth Amendment due process rights due to its lack of incorporated warrant procedures and based on a failure of procedural due process. Although the defendants address the integration of the warrant requirement at length in their memo-randa, and this Court has also examined the issue, the defendants fail to discuss significant issues of procedural due process aside from stating that Article 37 “inherently provides” specific standards for inspection.
27.
Procedural due process requires both notice and “an opportunity to be heard at a meaningful time and in a meaningful manner.” Daniels v. Bd. of Reg. in Med., 418 Mass. 380, 383 (1994), quoting In the Matter of Tobin, 417 Mass. 92, 101 (1994). ‘The core of procedural due process is the adequacy of the hearing before a deprivation of liberty or property occurs.” Aime v. Commonwealth, 414 Mass. 667, 668 (1993), citing Matthews v. Eldridge, 424 U.S. 319, 332-33 (1976). Challenges to due process that are “speculative and premature” will not be entertained. Commonwealth v. Horan, 360 Mass. 739, 741 (1972), quoting United States v. Marion, 404 U.S. 307, 325-26 (1971).
28.
In the current case, the Milford Board of Health sent out letters to rental property owners in order to make them aware of the enactment of Article 37. The first such letter, dated March 28, 2007, mentions that there are “significant penalties for failure to cooperate and comply with the various requirements of the By-Law." The second letter sent out by the Board of Health to non-responding unit owners threatens “to invoke judicial insistence to bring about compliance” and also mentions the imposition of daily monetaiy penalties. Neither of these letters explain the alternatives to compliance that a unit owner would have in terms of requesting a hearing or the right to require that the town acquire an administrative search warrant prior to inspection. An approach to the enforcement of the ordinance that fails to provide adequate notice to the unit owners of their rights violates procedural due process. Commonwealth v. Brown, 426 Mass. 475, 480 (1998); See also Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990), cert. denied, 498 U.S. 1041 (1991) (“As the rubric itself implies, procedural due process is simply a guarantee of fair procedure” (citations omitted)). However, it is undisputed that no enforcement actions have yet taken place, nor have administrative search warrants been sought.
29.
Although there appear to be flaws with the notice provided in this case, the lack of any enforcement of Article 37 make a complete invalidation of the bylaw premature at this time. In this circumstance, it is appropriate to suggest that since there has been no enforcement action taken and no administrative search warrants requested, the Milford Board of Health should take steps to cure the procedural defect in its plan of enforcement by sending out another notification to non-complying unit owners that clearly informs the public of their potential remedies if they would like to challenge the inspections. Otherwise, the municipality invites a similar claim in the future that could have more serious consequences.
30.
Given that the relief requested by the plaintiffs is premature in this action but that there were deficiencies in the notice provided by the defendants, summary judgment is DENIED as to both parties.
ORDER
Based on the foregoing, the defendants’ Motion for Summary Judgment is ALLOWED as to Counts I, II, and III and DENIED as to Count IV, and the plaintiffs’ Motion for Summary Judgment is DENIED as to all counts. The Court further suggests that the parties confer and submit a form of judgment for approval of this Court.[4]

 The defendants make additional arguments as to the plaintiffs’ potential lack of standing and the lack of ripeness of the current issue; however, given this Court’s finding that the plaintiffs’ Fourth Amendment rights are protected, these arguments are not addressed.

 To the extent that the defendants request costs and attorney fees, such a request is denied as they have failed to cite “a specific statute, court rule, or contractual agreement” entitling them to such an award. Preferred Mut. Ins. Co. v. Gamache, 426 Mass. 93, 95 (1997).